**In re John DRIGGS, Debtor.**

**In re FERRANTI HEALTHCARE SYSTEMS CORP., Debtor.**

**In re R. Paul SMITH, Debtor.**

**In re REISTERSTOWN PLAZA ASSOCIATES, Debtor.**

**Bankruptcy Nos. 91–4–2718–PM, 91–5–8307–SD, 94–1–2948–DK and 94–5–7639–JS.**

United States Bankruptcy Court, D. Maryland.

Jan. 27, 1997.

George Pitts, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for John Driggs.

Mark J. Friedman, Piper & Marbury, Baltimore, MD, for Ferranti Healthcare Systems Corporation.

Paul B. Bran, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for R. Paul Smith.

Stephen F. Fruin, Whiteford, Taylor & Preston, Baltimore, MD, for Reisterstown Plaza Associates.

W. Clarkson McDow, Jr., U.S. Trustee, Region 4, Columbia, SC, Clifford J. White, III, Assistant U.S. Trustee, Greenbelt, MD, Karen H. Moore, Assistant U.S. Trustee, Edmund A. Goldberg, Office of the U.S. Trustee, Baltimore, MD, for the U.S. Trustee.

Before MANNES, Chief Judge,
SCHNEIDER, DERBY and KEIR,
Bankruptcy Judges.

*MEMORANDUM OF DECISION RE-
QUIRING THE PAYMENT OF POST-
CONFIRMATION QUARTERLY
FEES IN CHAPTER 11 CASES
PENDING ON JANUARY 27, 1996,
THE EFFECTIVE DATE OF THE
AMENDMENT TO 28 U.S.C.
§ 1930(a)(6)*

Congress amended 28 U.S.C. § 1930(a)(6) to require the payment of postconfirmation quarterly fees in Chapter 11 bankruptcy cases, effective January 27, 1996. Pursuant to the amended statute, the Office of the U.S. Trustee for Region Four proceeded to demand such fees in a number of pending Chapter 11 cases in which plans had been confirmed before the effective date of the statute. The above-captioned Chapter 11 cases were selected for a consolidated hearing upon the issue of whether such postconfirmation quarterly fees are required to be paid in cases with confirmed plans pending on the effective date of the statute. These matters came on for a consolidated hearing on October 2, 1996, before the four U.S. Bankruptcy Judges of the United States Bankruptcy Court for the District of Maryland at the U.S. Courthouse in Greenbelt, Maryland.

A matter of days before the hearing, President Clinton signed into law a further amendment to the statute clarifying that Congress intended the act to apply to all pending Chapter 11 cases. With this clarification, we hold that the statute requiring the payment to the U.S. Trustee of postconfirmation quarterly fees is applicable to all Chapter 11 cases pending on the effective date of the statute until the cases are closed. However, such quarterly fees will not be required to be paid for any quarter after the filing by the debtor of a final report or motion to close the case, *that was pending on the date of this opinion.* During oral argument the U.S. Trustee represented that once an application for a final decree is filed, additional fees will not continue to accrue in most cases, including those presently pending in the four above-captioned cases. The undersigned Judges consider that position to be both reasonable and responsible.

*FINDINGS OF FACT*

*IN RE JOHN DRIGGS*

1. On June 5, 1991, the debtor filed a voluntary Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the District of Maryland at Rockville (Case No. 91–4–2718–PM).

2. On August 4, 1994, the Court [Mannes, C.J.] entered an order confirming the second amended joint plan of reorganization, the proponents of which were the individual debtor, John Driggs; the Driggs Group, Inc., a corporation controlled by the debtor; and the official committee of unsecured creditors.

3. The confirmed plan called for the establishment of a creditors' trust to receive, administer and liquidate the majority of assets that comprised the debtor's estate, as well as for the continuation of the bankruptcy case for the purpose of administering certain estate assets. The plan provided for the establishment of a plan committee to serve as trustees of the creditors' trust. Trotter Kent, Inc., serves as asset manager for the Driggs reorganization creditors' trust and the plan committee. The assets of the trust include certain class A preferred stock in the Driggs Group, Inc., issued in connection with a recapitalization of the Driggs Group which the Court approved. Under the terms of the agreement, the preferred stock must be redeemed by the Driggs Group before May 31, 2000, for a redemption price of not less than $5.5 million. Monthly dividend payments on the preferred stock aggregate $34,774.20 per month. Upon the disposition of the assets held in the trust and in the estate, the plan committee may apply to the Court for an order closing the case.

4. This matter came before the Court upon the objection of the plan committee to the notice of the Office of the U.S. Trustee for Region Four calling for the payment of quarterly fees under 28 U.S.C. § 1930(a)(6). The issue was joined with the plan committee standing in the shoes of the individual debtor.

## IN RE FERRANTI HEALTHCARE SYSTEM CORPORATION

5. On December 11, 1991, Ferranti Healthcare System Corporation filed a voluntary Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the District of Maryland at Baltimore (Case No. 91–5–8307–SD).

6. On January 15, 1993, the Court [Derby, J.] entered an order confirming the debtor's plan of liquidation.

7. The debtor sold substantially all of its assets prior to confirmation of the plan. As of August, 1995, the debtor had completed the collection of its accounts receivable and the distribution of all of its remaining assets. At this time, the debtor owns no property, real or personal. All funds owned by or for the debtor have been disbursed in accordance with the plan.

8. All payments required by the plan have been made.

9. By reason of its dissolution as a corporate entity, the debtor has ceased to exist.

10. On June 18, 1996, the U.S. Trustee moved to compel the filing of postconfirmation reports and payment of quarterly fees, which fees became due as a result of the effective date of P.L. 104–99, amending 28 U.S.C. § 1930(a)(6).

11. On August 1, 1996, the debtor filed a response to the motion of the U.S. Trustee and an application for a final decree. The debtor's final report and application for final decree reported a total distribution under the plan in the amount of $2,646,882.32, and a percentage payment to the general class of unsecured creditors within the plan of 30.85%.

12. The debtor has not paid quarterly fees for the first three quarters of 1996.

13. The U.S. Trustee conceded that the debtor is out of existence; that it has no funds from which its quarterly fees could be paid; and that quarterly fees should not continue to accrue after the date upon which the debtor filed its final report and application for final decree, namely August 1, 1996. Nevertheless, the U.S. Trustee requested that this Court enter a judgment in its favor against the debtor in the amount of $750, representing the minimal amount of quarterly fees ($250) due for each of the first three quarters of 1996. Upon the entry of the judgment for $750 in quarterly fees, the U.S. Trustee consents to the entry of a final decree and closure of the *Ferranti Healthcare* case. The debtor does not oppose entry of the requested judgment.

## IN RE R. PAUL SMITH

14. On June 6, 1994, the debtor filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Maryland at Greenbelt (Case No. 94–1–2948–DK).

15. On October 27, 1995, the Court [Keir, J.] entered an order confirming the debtor's amended Chapter 11 plan of reorganization (the "Smith Plan"). The Smith Plan provid-

ed for payments to creditors over an eight-year period ending in November, 2003. Under the Smith Plan, all of the assets of the estate revested in the debtor as of the effective date, which occurred in November, 1995. The provisions of the Smith Plan were modified by the plan of reorganization confirmed in the case of *In re Joseph Smith & Sons, Inc.*, Case No. 94–1–2947–DK (the "Corporate Plan"). Pursuant to the terms of both plans, certain creditors of both the R. Paul Smith and the Joseph Smith & Sons, Inc., estates would be paid initially under the Corporate Plan, and in the event of a default, subsequently under the Smith Plan. Both plans further provided that both estates will remain open until one Asrael, a creditor, should be paid in full.

16. On April 12, 1996, the U.S. Trustee notified the debtor that post-confirmation quarterly fees for the first quarter of 1996 were due and payable no later than April 30, 1996. On April 26, 1996, R. Paul Smith filed his first post-confirmation report. On May 30, 1996, the debtor filed an objection to the claim for postconfirmation quarterly fees filed by the U.S. Trustee. The U.S. Trustee has not billed a sum certain, but estimated that Mr. Smith owes between $250 and $5,000 in fees for disbursements made for the first quarter of 1996.

*IN RE REISTERSTOWN PLAZA ASSOCIATES*

17. On November 30, 1994, the debtor filed a voluntary Chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the District of Maryland at Baltimore (Case No. 94–5–7639–JS). The debtor was a Maryland partnership formed on March 27, 1980, for the purpose of purchasing, owning and operating a 540,000 square-foot shopping center known as Reisterstown Road Plaza, situated on approximately 55 acres in Baltimore City.

18. On September 29, 1995, the Court [Schneider, J.] entered an order confirming the debtor's amended plan of reorganization. Pursuant to the plan, and with the consent of the debtor's primary secured creditor, The Aetna Casualty & Surety Company, the debtor's principals were required to make a new value contribution of $600,000.00, to be paid on the effective date of the plan. In addition, the debtor was required to pay in full more than $900,000.00 worth of priority, administrative and unsecured claims within 60 days after the effective date of the plan. All of these payments were made before January 27, 1996.

19. On May 28, 1996, the debtor filed a final report and application for final decree, to which the U.S. Trustee objected pending payment of outstanding quarterly fees allegedly due for the first two quarters of 1996.

*CONCLUSIONS OF LAW*

1. January 27, 1996, was the effective date of the amendment to 28 U.S.C. § 1930(a)(6), requiring the payment of post-confirmation quarterly fees. The applicable portion of 28 U.S.C. § 1930(a)(6), as amended, provides as follows:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.

*Id.*

2. Regarding the retroactive application of a federal statute, the Supreme Court stated the following proposition in the case of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994):

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern

absent clear congressional intent favoring such a result.

*Id.*

3. On September 28, 1996, the legislative intent to have the foregoing amendment apply to all Chapter 11 cases pending on the effective date was further clarified when the President signed into law the following amendment to 28 U.S.C. § 1930(a)(6):

> Section 101(a) of Public law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting: "Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. S 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law."

Pub.L. No. 104–208, § 109(d), 110 Stat. 3009, *reprinted in* 142 Cong.Rec. H11644–01, H11649 (Sept. 30, 1996).

4. The amendment to 28 U.S.C. § 1930(a)(6) has been held to require the payment of quarterly fees in all Chapter 11 cases pending on the effective date of the amendment, including those with confirmed plans. *Accord In re Central Florida Electric, Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996); *In the Matter of Upton Printing,* 197 B.R. 616 (Bankr.E.D.La.1996); *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Pa.1996); *McLean Square Associates,* 201 B.R. 436 (Bankr.E.D.Va.1996).

5. The amendment to the statute deleted the confirmation of a plan from the list of enumerated events that terminate the requirement of tendering quarterly fee payments. The legal effect of the amendment was the requirement that quarterly fee payments continue to be made to the U.S. Trustee for every quarter or portion thereof after confirmation of a plan and until the closing of the case. The amended statute's omission of the closing of the case from the list of events terminating the requirement of making postconfirmation quarterly fee payments did not create the absurd result of making such payments due for an indefinite period of time. By its application to "each case under chapter 11," the statute is understood to have the legal effect of requiring the payment of quarterly fees until the case is dismissed, converted *or closed. McLean Square Associates,* 201 B.R. 436 (Bankr.E.D.Va.1996).

6. In requiring the payment of quarterly fees that accrued on and after January 27, 1996, the effective date, the amended statute is being accorded only prospective application. The U.S. Trustee for Region Four has not sought retroactive application of the amendment for unpaid fees due in any quarter before January 27, 1996. *Accord, In re Central Florida Electric, Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996); *In the Matter of Upton Printing,* 197 B.R. 616 (Bankr.E.D.La. 1996); *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Pa.1996).

7. Quarterly fees will not be assessed in any of the instant Chapter 11 cases for any quarter after the date of the filing by the debtors of an application for an order closing the case. The Bankruptcy Judges agree with the U.S. Trustee that the fact that the closing of any of the instant cases may have been postponed by the decision of these controversies should not act to the detriment of the debtors by increasing their exposure for the payment of quarterly fees.

8. The Judges express no opinion regarding the mechanics of collecting the fees, the means of their computation, or the identity of the payors in any given case, pending further proceedings in any Chapter 11 case in which postconfirmation quarterly fees are held to be due and owing in conformity with this opinion, except in the *Ferranti Healthcare Systems* case, in which the debtor's assets were distributed after the confirmation by the Court [Derby, J.] of a plan of liquidation. In *Ferranti,* the Court [Derby, J.] will accede to the request of the U.S. Trustee and enter judgment in its favor against the debtor in the amount of $750, representing the minimal amount of quarterly fees ($250) due for each of the first three quarters of 1996. Upon the entry of the judgment, a final decree and closure of the case will be entered as agreed by the U.S. Trustee.

ORDERS ACCORDINGLY.