In re **BOULDERS ON THE RIVER, INC.,** an Arizona corporation, Debtor-in-possession.

Bankruptcy No. 692–64208–aer11.

United States Bankruptcy Court, D. Oregon.

Jan. 31, 1997.

---

Wilson C. Muhlheim, Muhlheim, Palmer & Wade, Eugene, OR, for Debtor-in-Possession.

Paul J. Garrick, Assistant U.S. Trustee, Eugene, OR, for United States Trustee.

### MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court upon the Reorganized Debtor's (RD) final report and application for final order and order closing this case and response filed in objection thereto by the United States Trustee (UST).

### BACKGROUND

The debtor filed its petition for relief under Chapter 11, herein, on July 21, 1992. The debtor's major asset is an apartment complex. On April 14, 1993, an order was entered, herein, confirming the debtor's second amended plan of reorganization. The major lienholder appealed the order but a stipulated order dismissing the appeal was entered in the United States District Court for the District of Oregon in December, 1995.

In June, 1996, the RD filed its final report and application for entry of a final decree. The UST objected arguing that the RD had not paid the appropriate UST fee for the second quarter of 1996.

A hearing on the objection was held on October 1, 1996. The parties were permitted to submit post hearing briefs. The last brief was submitted on November 15, 1996 and the matter is now ripe for a decision.

In its response to the RD's request for entry of a final decree, the UST argues that the RD has not paid the fees required by 28 U.S.C. § 1930(a)(6). That statute has been amended twice by Congress in 1996, first in January and later in September. Until January 27, 1996, the statute read in pertinent part as follows:

**1.** In another subsection of the Omnibus Act, Congress created new graduated fee categories, although the minimum fee of $250 for disbursements up to $15,000 remained the same. The new fees are as follows:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the ... court the following filing fees:

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until a plan is confirmed or the case is converted or dismissed, whichever occurs first.* The fee shall be $250 for each quarter in which disbursements total less than $15,-000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,-000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more.... (emphasis added)

The statute was amended (effective January 27, 1996) by § 211 of the Balanced Budget Downpayment Act, Pub.L. 104–99, 110 Stat. 26, 37–38 (1996) (the January amendment). The January amendment deleted the phrase "a plan is confirmed or"; thus the statute now provides, in pertinent part:

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit into the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until the case is converted or dismissed, whichever occurs first....* (emphasis added)

This statute was further amended by § 109(d) of the Omnibus Consolidated Appropriations Act, Pub.L. 104–208, 110 Stat. 3009 (1996), effective September 30, 1996 (the September amendment)[1], to add to the text:

> ... $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for

Provided further, That, *notwithstanding any other provision of law,* the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable *from and after January 27, 1996,* in all cases (including without limitation, any cases pending as of that date), *regardless of confirmation status of their plans.*[2] (emphasis added)

Here, the RD argues that there have been no "disbursements" post-confirmation in this case hence, either no fee is owed pursuant to the statute or, in the alternative, only the minimum fee required by the statute is owed. The UST maintains that the term "disburse-

> each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more.

Omnibus Consolidated Appropriations Act, Pub.L. 104–208, § 109(a), 110 Stat. 3009 (1996).

2. The September amendment resolved a boiling controversy amongst the courts as to whether the January amendment was intended to be applied to cases with plans confirmed before January 27, 1996. The cases were split pretty much down the middle. *Compare, In re Precision Autocraft, Inc.,* 197 B.R. 901 (Bankr.W.D.Wa.1996); *In Re C F & I Fabricators of Utah, Inc.,* 199 B.R. 986 (Bankr.D.Ut.1996); *In re Hudson Oil Company, Inc.,* 200 B.R. 52 (Bankr.D.Kan.1996) (all holding the amendment does not apply), *with In re Central Florida Electric, Inc.,* 197 B.R. 380 (Bankr.M.D.Fla.1996); *In re Upton Printing,* 197 B.R. 616 (Bankr.E.D.La.1996); and *In re Foxcroft Square Company,* 198 B.R. 99 (Bankr. E.D.Pa.1996) (all holding the amendment applies from 1/27/96 forward.) In light of the September amendment, Debtor has stipulated to the subsection's applicability from January 27, 1996 forward. Debtor's Reply Brief, 1:23–26. *It has not questioned the constitutionality of the purported retroactive application.* We thus need not reach that issue. *See e.g. Foxcroft, supra* at pp. 104–6 (discussing 5th Amendment "takings clause" issues'); *Hudson Oil, supra* at 56 (discussing separation of powers issues).

Another controversy amongst the courts is when the post confirmation payments should cease. A literal reading of the January Amendment reveals that if the case is not converted or dismissed, the payments go on in perpetuity.

ments" means any monies paid by the RD post confirmation.

## ISSUE

As framed by the parties, the sole issue for this court to decide is how the UST fees owing for the second quarter of 1996 should be computed.

## DISCUSSION

■ All statutory references are to the Bankruptcy Code, Title 11, United States Code unless otherwise indicated.

Some courts have construed the subsection to mean the fees are only payable in aborted cases (i.e. converted or dismissed.) If the case does neither, but simply closes, the fees aren't owed. *See e.g., In re C n' B of Florida, Inc.,* 198 B.R. 836 (Bankr.M.D.Fla.1996 and *In re Boone,* 201 B.R. 499 (Bankr.W.D.Tenn.1996)). Others have reconciled the language by holding the fees end (if there is no dismissal or conversion) upon entry of the final decree, *see, In re McLean Square Associates, G.P.,* 201 B.R. 436 (Bankr.E.D.Va. 1996); *In re Jr. Food Mart of Arkansas, Inc.,* 201 B.R. 522, 524 f.n. #2, (Bankr.E.D.Ark.1996) (dicta), while another has questioned the entry of the final decree as the appropriate date. *In re Beechknoll Nursing Homes, Inc.,* 202 B.R. 260 (Bankr.S.D.Oh 1996). The UST maintains the "shall accrue and be payable" language in the September Amendment, negates the "aborted case" theory, and resolves the controversy. He may be right, (which would still leave open the question of when fees cease in successful cases.) We need not address this issue in any of its permutations as the UST is only requesting post-confirmation fees through 2nd Quarter, 1996, UST's Memo, 10: f.n.# 11, (not through entry of the final decree) and the RD has not argued the "aborted case" theory.

Finally, the courts have debated who owes the fees. The subsection's introductory language states that *"[P]arties commencing a case* under title 11 shall pay to the clerk the following *filing fees."* (emphasis added). Sub-subsection (6) which references the quarterly fees, is in the passive voice. At least one court has held that only the party who commences the case owes the fees, and that post confirmation, whether the original chapter 11 debtor constitutes the reorganized debtor must be decided according to the definitions in the plan. *In re C F & I Fabricators of Utah, Inc., supra* at 994, f.n.# 20 (Bankr.D.Ut. 1996). Another court has stated in dicta that only the DIP need pay the fee. *In re C n' B of Florida, Inc., supra* at 838 (Bankr.M.D.Fla.1996). The RD does not argue it is not the same entity which filed the petition. Therefore, this issue is not before this court.

Again, 28 U.S.C. § 1930(a)(6) (the statute) requires that a quarterly fee

> ... shall be paid to the United States Trustee, ... in each case under Chapter 11 of Title 11 for each quarter ... until the case is converted or dismissed, whichever occurs first ... The fee shall be $250 for each quarter in which *disbursements* total less than $15,000; $500 for each quarter in which *disbursements* total $15,000 or more but less than $75,000; ... (emphasis added).

Thus, the fee is based upon a sliding scale depending upon the amount of "disbursements" made by the RD in each quarter, here, the second quarter of 1996.

The UST argues that the term "disbursements" applies to all payments made by the RD post-confirmation. The UST notes that the Ninth Circuit has held that: "The definition of 'disburse' is 'to expend ... pay out.'" *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir.1994). The UST maintains that giving the term "disbursements" a broad definition will carry out the Congressional purpose in enacting the January and September amendments, namely, to increase the fees paid by Chapter 11 debtors to support the United States Trustee Program.

The term "disbursements", however, is a term of art. In *St. Angelo*, the Ninth Circuit held:

> The term "disbursements" is not defined anywhere in 28 U.S.C. § 1930(a)(6), its legislative history, or the case law. However, a plain language reading of the statute shows that Congress clearly intended "disbursements" to include all payments from the *bankruptcy estate*. (emphasis added).

*St. Angelo v. Victoria Farms, Inc., Id.*

Section 541 provides in pertinent part:

> (a) The commencement of a case ... creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:
>
> ...

Section 1141(b) provides:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Here, Paragraph VIIA of the confirmed plan provides:

> On the Effective Date the Reorganized Debtor shall be vested with all of its property free and clear of all claims, liens, charges or other interests of creditors arising prior to the Confirmation Date except for liens upon property securing Allowed Secured Claims provided for in the Plan. The Reorganized Debtor may transact business and conduct its affairs free of any restriction of the Court or the Code, except as explicitly set forth in the Plan and various security documents and debt instruments.... Second Amended Plan of Reorganization, P. 6, 11. 15–20.

Nothing in the order of confirmation contradicts or modifies the language quoted above. Thus, in this case, it is clear that, pursuant to the terms of the confirmed plan and § 1141(b), the bankruptcy estate ceased to exist when the order of confirmation became final. Hence, there was no bankruptcy estate in existence during the second quarter of 1996. It follows, there were no "disbursements" upon which to compute the fees owing to the UST pursuant to the statute.[3]

■ It does not follow, however, that there are no fees owing to the UST pursuant to the statute. The statute makes it clear that the fees are owing in "... each case under Chapter 11 of Title 11 ..." The statutory scale provides that the fees shall be "... $250 for each quarter in which disbursements total less than $15,000; ..." Here, since the disbursements for the second quarter of 1996 were less than $15,000, a fee of $250 is owed to the UST.

### CONCLUSION

Based upon the foregoing, this court concludes that the RD owes the UST $250, pursuant to the statute, for the second quarter of 1996. Upon payment of this sum, the

---

**3.** At least one other court has reached a result consistent with the result reached herein. *See In re SeaEscape Cruises, Limited,* 201 B.R. 321 (Bankr.S.D.Fl.1996).

final decree may be entered; an order consistent herewith shall be entered.