In re HOME CENTERS, INC., Debtor.

Bankruptcy No. 92–50618.

United States Bankruptcy Court,
N.D. Ohio.

July 8, 1997.

Derrick V. Rippy, Staff Attorney, Cleveland, OH, for Office of the U.S. Trustee.

Roger J. Stevenson, Roetzel & Andress, Akron, OH, Trustee of the Home Centers, Inc., Liquidation Trust.

## MEMORANDUM DECISION

H.F. WHITE, Bankruptcy Judge.

A hearing was held on the "United States Trustee's Motion for an Order Directing the Debtor to Pay Statutory Fees Required by 28 U.S.C. § 1930(a)(6), as Amended by Section 211 of Public Law 104–99, Enacted January 27, 1996" (the "Motion").

Present at the hearing was Derrick V. Rippy for the Office of the U.S. Trustee ("UST") and Roger J. Stevenson, Trustee of the Home Centers, Inc. Liquidation Trust ("Trust"). The parties submitted briefs in support of their position. Based upon the papers filed and presentations of counsel, the court concludes the Motion shall be GRANTED.

## BACKGROUND

These facts are undisputed by the parties.

1. Home Centers, Inc. ("Debtor") filed its voluntary chapter 11 bankruptcy petition in 1992. On February 15, 1994, this court confirmed the Debtor's Liquidating Plan of Reorganization ("Plan").

2. As required by the Plan, the Debtor turned over all of its tangible and intangi-

ble assets to the Trust on February 15, 1994.

3. The Trust is a separate legal entity from the Debtor. It has its own name, agents, federal tax identification number and bank accounts. It files its own tax returns.

4. On January 27, 1996, Congress enacted Public Law 104–99 which, in part, amended 28 U.S.C. § 1930(a)(6) to require the payment of UST quarterly statutory fees post-confirmation (the "Quarterly Fees").

5. All quarterly fees due the UST for disbursements made prior to the confirmation of the plan have been paid. Some were paid, post-confirmation, by the Trust pursuant to its contractual obligation to pay all costs of administration that had been incurred by the Debtor through the date of confirmation, to the extent sufficient funds were available.

6. The Debtor has no assets from which to pay additional fees to the UST even if such fees were due and owing. The Trustee happens to have sufficient cash on hand to pay such fees if it should be required to do so.

7. The UST has asked the court to order the Debtor to pay Quarterly Fees to the UST, pursuant to 28 U.S.C. § 1930(a)(6), based upon the Debtor's disbursements made after January 27, 1996.

8. The Debtor has not, and will not, make any disbursements after January 27, 1996.

9. The Trust has made, and will make, distributions after January 27, 1996, both for the costs of administering the Trust and pursuant to its contractual duty to pay claims against the Debtor that arose before the filing of its chapter 11 bankruptcy petition, to the extent funds are or become available, and in accordance with the priorities set out in the Plan and in the Bankruptcy Code.

10. At the hearing on the Motion, the court noted, in this case, the Debtor's assets were transferred to the Trust pursuant to the confirmed Plan to make distributions to creditors. The court indicated it was uncertain whether 28 U.S.C. § 1930(a)(6) was applicable to the Trust since the Debtor was left with no assets from which to make distributions and no longer exists as a legal entity.

## ISSUE

When a confirmed plan provides for the transfer of the debtor's assets to a trust, and plan confirmation and creation of the trust occurs on or before February 15, 1994, is the trust liable to pay post-confirmation quarterly fees to the U.S. Trustee, pursuant to 28 U.S.C. § 1930(a)(6), as amended on January 27, 1996?

## DISCUSSION OF LAW

28 U.S.C. § 1930(a)(6) provides, in relevant part:

(A) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of court the following filing fees:

. . .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6).

Prior to its amendment, 28 U.S.C. § 1930(a)(6) required all chapter 11 debtors to pay quarterly fees "for each quarter (including any fraction thereof) until *a plan is confirmed* or the case is converted or dismissed, whichever first occurs". (emphasis supplied). The amendment deleted the words "a plan is confirmed" which results in the two conditions, conversion or dismissal, as the events that trigger an end to payment of Quarterly Fees. The history and interpretation of this amendment is aptly summarized in *In re Huff,* 207 B.R.

539, 1997 WL 168603 (Bankr.W.D.Mich. 1997).

Based on the text of this amendment, as well as the legislative history, some courts held that the effect of the January 27, 1996 amendment was to impose quarterly fees upon all chapter 11 debtors, including those whose plans of reorganization were confirmed prior to reorganization.[1] Other courts, however, disagreed and essentially held that the imposition of quarterly fees upon a case with a Plan confirmed before January 27, 1996 would be improperly retroactive legislation.[2]

Apparently in response to the conflict created as to whether the January 27, 1996 amendment should be given retroactive effect, Congress enacted the Omnibus Appropriations Act on September 30, 1996. That second amendment affected the quarterly fees in two ways. First, Section 109(a) increased the quarterly fee amounts set forth in § 28 U.S.C. S 1930(a)(6).[FN6] Second, section 109(d) removed any doubt concerning the prior amendment's application to debtors whose plans were confirmed before the prior amendment's effective date. Section 109(d) reads:

Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting: "Provided further, That, notwithstanding any other provision of law, the fees under § 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law." Pub.L. No. 104–208.

To date, nine reported cases have dealt with the effect of this second amendment. *In re Maruko*, 206 B.R. 225 (Bankr.S.D.Cal.1997); *In re P.J. Keating Co.*, 205 B.R. 663 (Bankr.D.Mass. 1997); *In re Indian Creek Limited Partnership*, 205 B.R. 609 (Bankr. D.Ariz.1997); *In re Burk Development Co., Inc.*, 205 B.R. 778 (Bankr.M.D.La. 1997); *In re Uncle Bud's, Inc.*, 206 B.R. 889 (Bankr.M.D.Tenn.1997); *In re Betwell Oil and Gas Co.*, 204 B.R. 817 (Bankr.S.D.Fla.1997); *In re Boulders on River, Inc.*, 205 B.R. 948 (Bankr.D.Or. 1997); *In re Driggs*, 206 B.R. 787 (Bankr.D.Md.1997); *In re Gryphon at Stone Mansion, Inc.*, 204 B.R. 460 (Bankr.W.D.Pa.1997) (en banc).

These nine cases uniformly agree that with this new language, Congress has appropriately specified its intent and that § 28 U.S.C. § 1930(a)(6) now properly applies retroactively to debtors whose chapter 11 plans were confirmed prior to January 27, 1996.[FN7]

1997 WL 168603, *2.

 This court concurs and finds that the Omnibus Appropriations Act of September 30, 1996 expressly provides that Quarterly Fees apply to all confirmed cases pending as of January 26, 1996 and thereafter, regardless of when confirmation occurred. Thus, the obligation to pay said fees would apply in this case. However, this court is faced with an additional issue because of the special circumstances of this case. The Trust was created at confirmation and the Debtor did not make any disbursements after confirmation. The Debtor has no assets and therefore, will not make any future disbursements, thus the court is faced with the question of who is responsible for the Quarterly Fees?

---

1. See, *In re McLean Square Assocs.*, 201 B.R. 436 (Bankr.E.D.Va.1996); *In re Foxcroft Square Co.*, 198 B.R. 99 (Bankr.E.D.Pa.1996); *In re Upton Printing*, 197 B.R. 616 (Bankr. E.D.La.1996); *In re Central Florida Elec., Inc.*, 197 B.R. 380 (Bankr.M.D.Fla.1996).

2. See, *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260 (Bankr.S.D.Ohio 1996); *In re Precision Autocraft*, 197 B.R. 901 (Bankr. W.D.Wash.1996); *In re Hudson Oil Co.*, 200 B.R. 52 (Bankr.D.Kan.1996); *In re CF & I Fabricators of Utah, Inc.*, 199 B.R. 986 (Bankr.D.Utah 1996); *In re C n' B of Florida, Inc.*, 198 B.R. 836 (Bankr.M.D.Fla.1996).

The UST argues that the plain language of both the Plan and Trust dictate the Trust is liable. In support, the UST refers to that provision of the Plan which says that the Trustee "will pay all costs and expenses of administering the Trust and the Plan" *Plan, Article IV, para. 4.5.1,* page 11 (Docket No. 414) and to that provision of the trust agreement which says that the Trustee "agrees to undertake the obligations created hereunder, including the obligation to make distributions required by the plan." *Trust, Article II, para. 2.2,* page 3 (Docket No. 415, Exhibit E).

This Court agrees with the UST's assertion that the cited language "explicitly indicates the Debtor contemplated the contribution of expenses for both the Trust and the Plan up until the closing of the estate". UST's Brief, p. 3. It is clear to this court that the Trustee contemplated continuation of expenses in the ordinary course of making distributions to creditors under the Trust.

In reviewing the provisions of the disclosure statement, Plan and trust agreement the court finds the Trust is a liquidating and disbursing agent for the Debtor, and would have to pay the fees if they applied to the Debtor. The disclosure statement, Plan and trust agreement each expressly provide that such fees are an expense of the Debtor and payment is the responsibility of the Trust. The disclosure statement provides that Class 1 claimants are administrative claim eligible for priority under § 507(a)(1) of the Bankruptcy Code. *Disclosure Statement, Classification and Treatment of Claims,* page 31 (Docket No. 415). Section 507(a)(1) provides that expenses under 28 U.S.C. § 1930, including the Quarterly Fees, have a first priority in distribution. Under the Plan, Class 1 claimants are to be paid in full. *Plan, Article III, Para. 3.1,* page 10 (Docket No.

414). The Trust provides that the Trustee shall make distributions in accordance with the Plan provisions. *Trust, Article III, para. 3.2 and 3.4,* pages 4, 6. (Docket No. 415, Exhibit E). The Trustee is expressly bound to make distributions as provided for in the Plan. Thus, here it is clear the Trustee is obligated to pay the Quarterly Fees. See, *In re Hudson Oil Company, Inc.,* 200 B.R. 52, 53 (Bankr.Kan.1996) (Court found that liquidating trust acted as disbursing agent for debtors and if the debtors were liable for the fees, then the trust would also be).

In reaching this conclusion this court found instructive the statements in *In re Gryphon at Stone Mansion, Inc.,* 204 B.R. 460 (Bankr.W.D.Pa.1997)[3]. The liquidating plan in *Gryphon* was confirmed and substantially consummated prior to the amendment to § 1930(a)(6). When addressing the issue of which party is responsible for the quarterly fees the court stated at page 466:

> Nonetheless, we agree with the United States Trustee's statement at oral argument that this court treats the reorganized entity as "a debtor" until the case is dismissed or closed. Thus, although the reorganized debtor may bear no structural relation at all to the former debtor-in-possession,[FN11] we will assume, arguendo, that the reorganized debtor is the entity against which the fee is to be assessed, because we can conceive of no other entity against which Congress could have intended to assess the fee.

204 B.R. at 466 (footnote omitted).

The reasoning in *Gryphon* is applicable here. The Trust is a separate legal structural entity from the Debtor. However, the Trust was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors. These duties of the Trustee are express, as

---

**3.** In *Gryphon* the court found the UST had a statutory claim for quarterly fees against the debtor, however, the court held that the claim was not enforceable in the bankruptcy court

and the UST would have to enforce its claim in another forum like any other post-confirmation creditor.

684

is the duty of the Trustee "to pay all costs and expenses of administering the Trust and the Plan". Congress has clearly stated that all confirmed chapter 11 debtors are obligated to pay the Quarterly Fees. Because the Trust has assumed the liabilities of the Debtor and Plan it is reasonable, in this case, that the Trust would be held responsible for the Quarterly Fees. The court finds this interpretation of § 1930 is reasonable and, in fact, can find no other meaningful interpretation. Therefore, it is the conclusion of the court that the Trust is obligated to pay the Quarterly Fees as required by 28 U.S.C. § 1930(a)(6) from the effective date of January 26, 1996 forward.

■ Finally, the court is aware that the period of time this matter was under advisement may have prevented the closing of the case. Therefore, the court shall enter an order stating said time period shall not act as a detriment to the Trust by increasing its exposure to subsequent Quarterly Fees. *In re Huff,* 207 B.R. 539 (Bankr.W.D.Mich.1997); *In re Driggs,* 206 B.R. 787 (Bankr.Md.1997).