**In re N. HESS' SONS, INC.,**
**t/a Hess Shoes, Debtor.**

**Bankruptcy No. 92–5–3516–SD.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Feb. 25, 1998.

Nancy V. Alquist, Van C. Durrer, II, Rachel S. Teiman, Ballard, Spahr, Andrews & Ingersoll, Baltimore, MD, for Debtor.

Karen H. Moore, Asst. U.S. Trustee, Jeannie Coltrane Lightsey, Office of U.S. Trustee, Baltimore, MD, for U.S. Trustee.

## *MEMORANDUM OF DECISION REGARDING DEBTOR'S APPLICATION FOR FINAL DECREE*

E. STEPHEN DERBY, Bankruptcy Judge.

Before the court is a dispute between N. Hess' Sons, Inc., the Debtor, and the United States Trustee over how to calculate the postconfirmation fees due to the U.S. Trustee.

### ISSUES

The issues to be decided are:

1. Are postpetition disbursements on which fees are calculated under 28 U.S.C. § 1930(a)(6) limited to expenditures made under a confirmed Chapter 11 plan, or do they include all expenditures, including those to conduct the Debtor's ordinary course of business?

2. Does the bankruptcy court have subject matter jurisdiction to rule upon this issue?

### PROCEDURAL BACKGROUND

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 7, 1992. On September 14, 1993, this court confirmed the Debtor's plan of reorganization (the "Plan"). The Plan provided, *inter alia,* for a series of dividends to unsecured creditors, the last of which occurred on September 13, 1996. On September 18, 1996, the Debtor filed its Final Certification and Report and Application for Final Decree Closing Case.

The U.S. Trustee responded that the Debtor had failed to pay the correct amount of statutory fees to it under 28 U.S.C. § 1930(a)(6), as amended. The court deferred its ruling until the conclusion of a joint proceeding before the bankruptcy judges in this district that challenged whether any postconfirmation fees were due to the U.S. Trustee in chapter 11 cases that were pending on January 27, 1996.

In *In re Driggs,* 206 B.R. 787 (Bankr. D.Md.1997), the bankruptcy judges in the District of Maryland held that the fees assessed by 28 U.S.C. § 1930(a)(6) are applicable to debtors whose plans had already been confirmed as of the January 27, 1996 effective date of amendments to the statute. The parties have stipulated that the amount due to the U.S. Trustee will be $250 if the court adopts the Debtor's position, and $18,250 if the court adopts the position of the U.S. Trustee. The Debtor has paid $250 to the U.S. Trustee, and it has deposited $18,000 in the registry of the court pending the outcome of this contested matter.

### ANALYSIS

Before considering how to define disbursements, the court must determine whether it has subject matter jurisdiction.

## A. SUBJECT MATTER JURISDICTION.

■ Subject matter jurisdiction is defined as the "authority [of the court] to adjudicate the type of controversy involved in the action...." Restatement (Second) of Judgments § 11, p. 108 (1982) (cited with approval in *Henderson v. United States*, 517 U.S. 654, 671 n. 19, 116 S.Ct. 1638, 1647 n. 19, 134 L.Ed.2d 880 (1996)). Fed.R.Civ.P. 12(h)(3), made applicable by Fed.R.Bankr.P. 7012(b), provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." This ground for dismissal can therefore be raised at any time during the proceeding, and it cannot be waived. *Fraidin v. Weitzman (In re Fraidin)*, 188 B.R. 529, 532 (D.Md.1995), *aff'd* 110 F.3d 59 (4th Cir.1997). The Debtor argues that the court is without subject matter jurisdiction to hear this matter because there is no express reservation of jurisdiction in the Debtor's confirmed plan, and there is no statute expressly granting jurisdiction.

The seminal case on the postconfirmation jurisdiction of the bankruptcy court in the Fourth Circuit is *Goodman v. Phillip R. Curtis Ent., Inc.*, 809 F.2d 228 (4th Cir. 1987).[1] The *Goodman* court interpreted the language of 11 U.S.C. § 1142 in connection with the postconfirmation authority of the bankruptcy court: "The grant of postconfirmation authority thus undoubtedly limits the authority of the court to matters concerning the implementation or execution of a confirmed plan." *Id.* at 232 citing 5 Collier on Bankruptcy ¶ 1142.01 at 1142–44 (15th ed.1986).[2] Later cases have interpreted *Goodman's* use of the term authority as defining the jurisdiction of the bankruptcy court. *In re Walker*, 198 B.R. 476, 481 (Bankr.E.D.Va.1996); *Poplar Run Five Ltd.*

*Partnership v. Virginia Electric & Power Co.*, 192 B.R. 848, 859 (Bankr.E.D.Va.1995); *In re A.H. Robins Co., Inc.*, 182 B.R. 128, 133 (Bankr.E.D.Va.1995).

A case that supports the Debtor's position is *In re Gryphon the Stone Mansion, Inc. v. U.S. Trustee*, 204 B.R. 460 (Bankr.W.D.Pa. 1997). The *Gryphon* case held that the bankruptcy court lacked subject matter jurisdiction over postconfirmation U.S. Trustee fees because they were not addressed in the debtor's plan, and the bankruptcy court's jurisdiction was limited to enforcing provisions of the confirmed plans. *Id.* at 463. The court also noted that "[t]he United States Trustee is in the same position as any other chapter 11 creditor whose claim arises post-confirmation and has no remedy available in the bankruptcy forum under the circumstances presented by the cases before us." *Id.* at 469. The *Gryphon* court's reasoning was that the U.S. Trustee was given, and held, a postconfirmation claim by virtue of the 1996 amendments to 28 U.S.C. § 1930(a)(6), and the U.S. Trustee must enforce its claim in the same manner as any other postconfirmation creditor in an appropriate nonbankruptcy forum. 204 B.R. at 468.

■ After confirmation, a newly reorganized debtor cannot "come running to the bankruptcy judge every time something unpleasant happens." *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991). The court's postconfirmation oversight should be restricted to activities relating to the bankruptcy and the reorganization, not the debtor's general business. *In re Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 378 (E.D.Pa.1996). Admittedly, there is no formal recitation of the debtor's postconfir-

---

**1.** There is also a wealth of case law in other jurisdictions with holdings similar to *Goodman* concerning the nature and extent of the court's subject matter jurisdiction in postconfirmation matters. *See e.g., Walnut Associates v. Saidel*, 164 B.R. 487, 491 (E.D.Pa.1994) ("Although the jurisdiction of the bankruptcy court continues until the Chapter 11 case is closed, once a plan has been confirmed, the court's jurisdiction begins to weaken"); *North American Car Corp. v. Peerless Weighing & Vending Machine Corp.*, 143 F.2d 938, 940 (2d Cir.1944) ("[s]ince at least 1944, courts have recognized the competing in-

terests between retaining jurisdiction after confirmation until entry of the final decree (see Bankr.R. 3020), and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility");

**2.** Although the *Goodman* case was published in 1987, the statutory language of § 1142 construed by the Fourth Circuit has not been amended since that opinion was issued.

mation responsibility for U.S. Trustee fees in the plan. This should not be viewed as a waiver by the U.S. Trustee, however, because pre-*Driggs* law at the time Debtor's plan was confirmed terminated the U.S. Trustee's fees at confirmation. *See* 28 U.S.C. § 1930(a)(6) (1993).

■ The fees owing to the U.S. Trustee do not arise under title 11 of the United States Code (the Bankruptcy Code), but rather under title 28. 28 U.S.C. § 1930(a)(6). Pursuant to its related to jurisdiction under 28 U.S.C. § 157(c)(1), a bankruptcy court has postconfirmation, subject matter jurisdiction over a matter if, but only if, "... it affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). In *Xonics* the matter failed this test because it involved a two creditor dispute over property that had been abandoned by the debtor in possession.

This controversy meets the *Xonics* test, however, because the U.S. Trustee, as statutory recipient of its fees under 28 U.S.C. § 1930, is in effect a creditor of the Debtor. Payment of the correct amount to the U.S. Trustee is therefore a matter of allocation of property among creditors, because it affects distributions required to be made by the Debtor "... until the closing of the case." *Driggs*, 206 B.R. at 791. *See* 28 U.S.C. § 1930(a)(6). It also affects allocations in this case as between Debtor and its creditors. In cases where all other creditors have not been paid before the U.S. Trustee, it would affect the allocation of distributions among creditors; and the correct calculation of U.S. Trustee fees is thus within the jurisdiction of this court. Despite the fact that the fees payable to the U.S. Trustee are statutory and not provided for under the Plan, they remain a duty of the postconfirmation debtor. As a statutory duty of the Debtor, if they must be paid, they concern the implementation and execution of Debtor's confirmed plan. *Goodman*, 809 F.2d at 232. Therefore, this court has subject matter jurisdiction to decide this issue.

## B. TREATMENT OF THE U.S. TRUSTEE'S FEES.

The Debtor raises two arguments. The first is that principles of *res judicata* apply to estop the U.S. Trustee from claiming fees for which the Plan, if they were due, should have provided. The second is that the word disbursements has customarily been construed to refer to distributions from a bankruptcy estate, not from a debtor postconfirmation. *Id.* The court will examine these contentions separately.

### 1. *Res judicata*

■ The Debtor's *res judicata* argument stresses two purposes for the doctrine. First, *res judicata* allows parties to rely on final judgments, and it thereby promotes fairness. In the instant case, reliance is not critical to the execution of the Plan, however, because the Debtor has been able to make its plan payments and still have enough remaining to put the disputed $18,000 sum into escrow pending this decision.

Second, judicial decisions are final among the parties and binding, even for the United States of America. Citing *In re Varat Ent., Inc.*, 81 F.3d 1310, 1315 (4th Cir.1996), the Debtor contends that an order confirming a Chapter 11 plan is a final judgment with *res judicata* effect. Therefore, the Debtor argues, the U.S. Trustee was required to assert its right to postconfirmation fees before this court entered the confirmation order in this case.

There is authority that supports the Debtor's position. *U.S. Trustee v. Craige (In re Salina Speedway, Inc.)*, 210 B.R. 851 (10th Cir. BAP 1997). However, the distinguishing factor between *Craige* and the case at bar is that the plan in *Craige* was confirmed after 28 U.S.C. § 1930(a)(6) was amended to provide for postconfirmation quarterly fees to the U.S. Trustee. *Id.* at 854. The *Craige* court held in favor of the debtor, noting—

this case differs significantly from [cases applying quarterly fees retroactively] because the UST was on notice of the existence of the amended statute before this plan was confirmed, and let the plan go to confirmation with no effort to insure that the postconfirmation fees were provided

for in the plan. Once the Bankruptcy Court confirmed the plan, the UST was bound by the plan just as all other creditors were.

*Id.* at 854. Unlike the facts in *Craige,* the confirmation order for the Debtor's plan was entered in 1993, which was well before the statute assessing postconfirmation fees was enacted. P.L. 104–99, § 211 (1996), P.L. 104–208, § 109(d) (1996).

Because the requirement that a debtor pay postconfirmation fees did not exist when the Debtor's plan was confirmed, *res judicata* is inapplicable. The issue of postconfirmation fees could not have been raised or ruled on in the plan confirmation proceeding. The correct way to analyze the applicability of the subsequently enacted fee assessment is whether Congress intended the new fee to apply. *See In re Driggs.* This question has been answered in the affirmative in the District of Maryland. *Id.* In *Driggs,* we noted that "the statute is understood to have the legal effect of requiring the payment of quarterly fees until the case is dismissed, converted or closed." *Id.* at 791 (citing *McLean Square Assocs.,* 201 B.R. 436 (Bankr.E.D.Va. 1996)). Therefore, principles of *res judicata* do not bar the U.S. Trustee's collection of these fees.

### 2. *Construction of disbursements in 28 U.S.C. § 1930(a)(6).*

■ The parties agree that, under *Driggs,* the Debtor was liable for § 19330(a)(6) fees to the U.S. Trustee for every postconfirmation quarter to October 31, 1996, when Debtor filed its final report and request for final decree. The dispute is simply how much was due.

28 U.S.C. § 1930(a)(6) provides:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees:

. . .

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the U.S. Trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which *disbursements* total less than $15,000; $500 for each quarter in which *disbursements* total $15,000 or more but less than $75,000; $750 for each quarter in which *disbursements* total $75,000 or more but less than $150,000; $1,250 for each quarter in which *disbursements* total $150,000 or more but less than $225,000; $1,500 for each quarter in which *disbursements* total $225,000 or more but less than $300,000; $3,750 for each quarter in which *disbursements* total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which *disbursements* total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which *disbursements* total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which *disbursements* total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which *disbursements* total $5,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

(Emphasis supplied).

The parties are in disagreement as to the meaning of the word disbursements in this section. The Debtor argues that disbursements should be construed to mean a disbursement under the Plan. The U.S. Trustee counters that the word should be construed broadly to include disbursements for any purpose, including monies disbursed in the ordinary course of Debtor's business.

The plain meaning of the legislature's words is always the starting point in statutory construction. *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Maine v. Thiboutot,* 448 U.S. 1, 12, 100 S.Ct. 2502, 2508, 65 L.Ed.2d 555 (1980). If the language is plain and unambiguous, we

look no further. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989) ("the inquiry should end ... where, as here, the statute's language is plain"). However, if a statute is ambiguous, the court looks beyond the language of the statute to the legislative history for guidance. *United States v. Irvin,* 2 F.3d 72, 76 (4th Cir.1993), *cert. denied,* 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994). If Congress' intent is not readily apparent from examining the legislative history, we apply the traditional tools of statutory construction. *Stiltner v. Beretta U.S.A. Corp.,* 74 F.3d 1473, 1482 (4th Cir.1996).

Interpretation of the word disbursements has not been addressed in the District of Maryland or by the U.S. Court of Appeals for the Fourth Circuit. In other jurisdictions, however, there is a wealth of conflicting case law. *Compare In re Jamko, Inc.,* 207 B.R. 758 (Bankr.S.D.Fla.1996) (the debtor's postconfirmation U.S. Trustee quarterly fees were calculated only on disbursements made under the plan); *In re Maruko, Inc.,* 206 B.R. 225, 229 (Bankr.S.D.Cal.1997) (same); *In re Boulders on the River, Inc.,* 205 B.R. 948, 951 (Bankr.D.Or.1997) (same); *In re Betwell Oil and Gas Co.,* 204 B.R. 817, 819 (Bankr.S.D.Fla.1997) (same); *SeaEscape Cruises, Ltd.,* 201 B.R. 321, 322 (Bankr. S.D.Fla.1996) (same); *with In re Sedro-Woolley Lumber Co., Inc.,* 209 B.R. 987, 989 (Bankr.W.D.Wash.1997) (quarterly fees calculated according to all expenditures, not just plan payments); *In re Corporate Bus. Prods., Inc.,* 209 B.R. 951 (Bankr.C.D.Cal. 1997) (same); *In re P.J. Keating,* 205 B.R. 663 (Bankr.D.Mass.1997) (same); *St. Angelo v. Victoria Farms,* 38 F.3d 1525 (9th Cir. 1994) (same); *In re Hays Builders, Inc.,* 144 B.R. 778, 780 (Bankr.W.D.Tenn.1992) (same); *In re Ozark Beverage,* 105 B.R. 510 (Bankr. E.D.Mo.1989) (same).

The U.S. Trustee argues that the plain meaning of disbursements is all payments made by a debtor pursuant to its plan or in the ordinary course of business before the debtor has made its final plan payment. This reasoning stems from an opinion by one of the earliest courts to probe this issue,

namely, *In re Ozark Beverage.* In the *Ozark Beverage* case, the bankruptcy court wrote:

Thus, the Court is compelled to examine the plain meaning of the statute in order to achieve Congressional intent. Section 1930(a)(6) assesses quarterly fees due the U.S. Trustee based on the amount of disbursements made by the debtor in a given quarter. While the Debtor argues that the word "disbursements" means only payments made to pre-petition creditors, neither the statute nor its legislative history gives even a hint that this was Congress' intended definition. Further, the Debtor has given the Court no indication as to the source of this new interpretation. In essence, the Debtor has simply proposed a novel definition of the term which would engender a less harsh result in this case. If Congress had intended such a meaning, surely it would have stated so more clearly.

105 B.R. at 512. The *Ozark Beverage* decision was written before the applicable amendments that extended 28 U.S.C. § 1930(a)(6) fees to the postconfirmation period. However, it has been relied upon by numerous post-amendment courts in construing the statute. *Accord, e.g., In re Marlon Dunn Contracting, Inc.,* 203 B.R. 783, 784 (Bankr.M.D.Fla.1996); *In re Flatbush Assocs.,* 198 B.R. 75, 77 (Bankr.S.D.N.Y.1996); and contra, *e.g., In re Jamko, Inc.,* 207 B.R. at 760.

The gist of the U.S. Trustee's reasoning is that, if Congress intended disbursements to be limited to disbursements under the plan of reorganization, it would have used more specific language. On the other hand, it appears to the court equally persuasive that if Congress intended disbursements to mean all postconfirmation payments made by the debtor, it could also have used more specific language to express its intent. The argument is, therefore, inconclusive.

In *St. Angelo v. Victoria Farms,* 38 F.3d 1525, 1534 n. 9 (9th Cir.1994), also predating the postconfirmation amendments to § 1930(a)(6), the Ninth Circuit found that the plain language of the word disbursement is any payment made by the debtor attributable to property of the debtor. It arrived at this conclusion from the definition of the word disburse in Webster's Third New Int'l Dictio-

nary 644 (1976), "to expend.... pay out." This definition, however, is more open ended than the definition of disbursement from Black's Law Dictionary (15th ed.1997), which is "[t]o pay out, commonly from a fund.... to make payment in settlement of a debt or account payable." Webster's indicates a payout without reference to source or purpose; Black's refers to the source of the monies paid out, and indicates what types of payouts qualify as disbursements.

It appears, based on the preceding authority, that the term disbursements is sufficiently ambiguous in § 1930(a)(6) that it does not carry a plain meaning. Consequently, the court must determine the construction of the language without any presumption of plain meaning. *See Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996) (rejecting the plain meaning test urged by counsel because the disputed word damage was subject to too much variation). Because the statutory language is subject to more than one legitimate interpretation, the court may consult extrinsic sources to determine its meaning. *Florida Power and Light Co. v. Lorion*, 470 U.S. 729, 737, 105 S.Ct. 1598, 1603, 84 L.Ed.2d 643 (1985) ("plain meaning, like beauty, is sometimes in the eye of the beholder") (Brennan, J.).

There is no legislative history directly on point regarding Congress' intent in its use of the word disbursements. On the other hand, there is a strong implication that 28 U.S.C. § 1930(a)(6) fees are in actuality a revenue generating mechanism to fund the U.S. Trustee program. For example, *see* H.R.REP. No. 104–676:

The Committee recommendation provides a total of $107,950,000 in budget (obligational) authority for the U.S. Trustees for fiscal year 1997, *to be entirely funded from offsetting fee collections.* The amount recommended is $5,678,000 above fiscal year 1996 and $3,683,000 below the request.

... *Public Law 99–554,* the Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986, established a U.S. Trustee System Fund in the U.S. Treasury, and *provided for the collection of fees into the Fund to finance program operations.*

The recommendation includes new language as proposed by the Administration, under section 109, to restructure quarterly fee payments for debtors under chapter 11 of the Bankruptcy Code but does not include a new surcharge on chapter 13 trustees payments. Also included is language to allow all fees collected to be used as offsetting collections to the U.S. Trustee program.

*Id.* at 29–30 (emphasis added).

It is significant to the court that the 1996 amendments to 28 U.S.C. § 1930(a)(6) were included in a revenue measure. Congress was making efforts toward a balanced budget. The 1996 amendments were added by the Balanced Budget Down Payment Act of 1996. P.L. 104–99, signed January 26, 1996. *See id.* at § 211, adopting Title I of Conf. Rep. 104–378, including § 111 thereof. The clarification that Congress intended the amendments to apply to previously confirmed Chapter 11 plans of reorganization was in the Omnibus Consolidated Appropriations Act of 1997. P.L. 104–208, § 109(d), 110 Stat. 3009, *reprinted in* 142 Cong.Rec. H11644–01, H11649 (Sept. 30, 1996). *See In re Driggs,* 206 B.R. at 790. This clarification also included an increased fee structure. P.L. 104–208, § 109(a). As a revenue measure, the ambiguity in § 1930(a)(6) should be resolved to maximize revenues.

As a revenue-generating mechanism, 28 U.S.C. § 1930(a)(6) fees are akin to a tax. Tax laws are to be construed in a light most favorable to the taxing authority as a matter of public policy. *See, e.g., Bob Jones Univ. v. United States,* 461 U.S. 574, 595, 103 S.Ct. 2017, 2030, 76 L.Ed.2d 157 (1983) (recognizing "the primary authority of the IRS and its predecessors in construing the Internal Revenue Code"). In light of the legislative context, the most persuasive construction is that of the U.S. Trustee's, namely, that Congress intended to maximize revenues.

**CONCLUSION**

The Debtor contended that a U.S. Trustee taxing measure unrelated to a debtor's usage of the bankruptcy system would be fundamentally unfair. However, if Congress indeed intended to maximize revenues through § 1930(a)(6) quarterly fees, it would breach no principle of fairness for it to do so. No

argument was made by the Debtor that any explicit legislative language imposing quarterly fees based on non-plan disbursements would have violated Congress' power. Therefore, the Debtor's fairness argument fails.

The propriety of imposing 28 U.S.C. § 1930(a)(6) fees on Chapter 11 postconfirmation debtors was acknowledged in this jurisdiction in *Driggs*, and the issue will not be revisited by this court. The court is constrained to view the statute, as a revenue measure, in a light most favorable to the taxing authority. In passing legislation, Congress is presumed to be aware of the rules of statutory interpretation employed by courts. *United States v. Langley*, 62 F.3d 602 (4th Cir.1995).

Although the term disbursements is susceptible to alternative interpretations, the U.S. Trustee's view is more compelling. The court holds that the term disbursements in 11 U.S.C. § 1930(a)(6) (1996) includes all postconfirmation expenditures by debtor "until the case is dismissed, converted *or closed.*" *Driggs*, 206 B.R. at 791. (Emphasis in original).