**In re PETTIBONE CORPORATION, et al., Debtor.**

**Bankruptcy Nos. 86 B 1563 to 86 B 1571.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 16, 2000.

Richard Friedman, Office of the United States Trustee, Chicago, IL, for Movant or Plaintiff.

Dean C. Gramlich, Steven F. Pflaum, Norman H. Nachman, McDermott, Will & Emery, Chicago, IL, for Respondent or Defendant.

Andrew J. Maxwell, Law Offices of Andrew J. Maxwell, Chicago, IL, trustee.

David E. Bennett, Vedder Price Kaufman & Kammholz, Chicago, IL, for PL Claimants.

## AMENDED MEMORANDUM OPINION

JACK B. SCHMETTERER,
Bankruptcy Judge.

This proceeding lies under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C. following Plan confirmation. The United States Trustee ("UST") has moved to Alter and Amend ("Motion to Alter") the

Order of August 16, 1999, which originally denied his Motion for Payment of Fees. That Motion seeks payment of post-confirmation UST fees assertedly due from the reorganized debtor pursuant to 28 U.S.C. § 1930. An initial Memorandum Opinion supporting the August 16th Order was withdrawn to permit review of the instant Motion to Alter or Amend.

For reasons stated in this Amended Opinion and pursuant to orders entered this date, the order entered August 16, 1999 will be vacated and a new order entered allowing the UST's original Motion for Payment of Fees, but only to the extent of $4,750 stipulated to be due for one quarter, plus quarterly minimum statutory fees of $250 due (if any now be due) and to become due until this bankruptcy case is closed or dismissed. The UST Motion is denied to the extent it seeks to have such fees computed under § 1930 based on non-Plan post-confirmation ordinary business expenses of the reorganized debtor.

### BACKGROUND AND CONFIRMED PLAN

No facts are in dispute.

Chapter 11 bankruptcy cases were filed by Pettibone Corporation, Inc. ("Pettibone") and nine of its subsidiaries on January 31, 1986. Those cases were jointly administered and involved many issues raised before and since Plan confirmation.[1] On December 9, 1988, an order was en-

---

1. Many published opinions have recited in detail the complex history of this bankruptcy case, and the many issues that arose in it: *In re Pettibone Corp.*, 156 B.R. 220, (Bankr. N.D.Ill.1993), *aff'd, Pettibone Corp. v. Hawxhurst*, 163 B.R. 989 (N.D.Ill.), *aff'd*, 40 F.3d 175 (7th Cir.1994); *In re Pettibone Corp.*, 151 B.R. 156 (Bankr.N.D.Ill.1992), *aff'd*, 161 B.R. 960, (N.D.Ill.1993), *aff'd in part, remanded in part, Pettibone Corp. v. United States*, 34 F.3d 536 (7th Cir.1994); *In re Pettibone Corp.*, 110 B.R. 848 (Bankr.N.D.Ill.), *aff'd, Pettibone Corp. v. Baker*, 119 B.R. 603 (N.D.Ill.1990), *vacated, Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991); *In re Pettibone Corp.*, 145 B.R. 570 (N.D.Ill.1992); *In re Pettibone Corp.*, 1989 WL 110781 (N.D.Ill. Sept. 14, 1989); *In*

*re Pettibone Corp.*, 1989 WL 105748 (N.D.Ill. Aug. 28, 1989), *dismissed by* 909 F.2d 1486 (7th Cir.1990) (table); *In re Pettibone Corp.*, 162 B.R. 791 (Bankr.N.D.Ill.1994); *In re Pettibone Corp.*, 151 B.R. 178 (Bankr.N.D.Ill. 1993); *In re Pettibone Corp.*, 135 B.R. 847 (Bankr.N.D.Ill.1992); *In re Pettibone Corp.*, 134 B.R. 349 (Bankr.N.D.Ill.1991); *In re Pettibone Corp.*, 138 B.R. 210 (Bankr.N.D.Ill. 1991); *In re Pettibone Corp.*, 121 B.R. 801 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.*, 123 B.R. 304 (Bankr.N.D.Ill.1990); *In re Pettibone Corp.*, 110 B.R. 837 (Bankr.N.D.Ill. 1990); *In re Pettibone Corp.*, 90 B.R. 918 (Bankr.N.D.Ill.1988); *In re Pettibone Corp.*, 74 B.R. 293 (Bankr.N.D.Ill.1987).

tered confirming Debtors' Second Amended Consolidated Plan of Reorganization, as Modified (the "Plan"). The confirmed Plan included all of Pettibone subsidiaries except for Hammermills, whose case was later dismissed. Pettibone and its reorganized subsidiaries merged, and Heico Holdings, Inc. ("Heico"), the reorganized Debtor, was and is the surviving corporation.

Pursuant to the Plan, any unpaid UST fees required under 28 U.S.C. § 1930 ("UST fees") at and before confirmation were to be paid by Heico, and those were apparently paid and are not in dispute here. Following confirmation, Heico has been paying the minimum amount of UST fees due under 28 U.S.C. § 1930, $250 per calendar quarter. The UST now argues that substantial UST fees resulting from applying the statutory formula to Heico's post-confirmation day-to-day non-Plan business operations remained due and owing. Heico disputes the contention that its non-Plan ordinary post-confirmation business operational expenditures fall within the definition of "disbursements" as used in § 1930 to compute UST fees.

However, the parties have stipulated that an additional $4,750 in fees for the fourth quarter of 1997 are due and owing under the Plan pursuant to 28 U.S.C. § 1930(a)(6) based on Heico's Plan—related disbursements. The stipulation did not affect or relate to any other years in issue.

Debtors were engaged in the business of manufacturing, selling and leasing heavy material handling vehicles and machinery, foundry and material processing equipment, and railway track specialty products. After the Plan was confirmed, Heico continued in most or all of that same business. Its very substantial operations are located across the United States and some foreign countries.

A number of product liability lawsuits were filed against Debtor and more than 100 such cases were pending when the Plan was confirmed. Because the Debtors' first layer of liability insurance was covered by a company that itself was in insolvency proceedings (Northumberland), the complex confirmed Plan sought to tap into insurance and defense assets of the next insurance layers of coverage. Product liability insurers for that coverage agreed to defend against the Products Liability ("PL") Claims and to pay judgments and settlements for the respective policy years within limits taking into account insolvency of the Northumberland insurer and the uncovered first layer of liability. The Plan established a PL trust to administer insurance funds available to pay allowed or liquidated PL Claims arising out of such lawsuits. PL Claims consisted of general unsecured products liability claims based on pre-bankruptcy injuries, while post bankruptcy cases were responsibility of the reorganized Debtor Heico. PL Claimants were permitted to settle or prosecute their PL Claims in order to liquidate the claim amounts. Andrew Maxwell was appointed as PL Trustee to receive, invest and distribute all insurance funds provided for PL Claimants.

But resolution of the injury suits before many different state and federal courts required years to resolve, and such resolution was entirely outside the responsibility and control of Heico, and only subject to limited influence through some efforts of the Plan Trustee and this Court to prod along those proceedings.

The Plan also provided for reorganization of Debtors' remaining assets and liabilities with Heico as the Disbursing Agent for certain Plan obligations of the reorganized debtor. Fulfillment of Heico's Plan obligations proceeded quite apart from the injury and insurance issues. Heico fully paid its Plan obligations to creditors as Disbursing Agent in 1997. The stipulation as to $4,750 due from it rested on such Plan-related disbursements in the fourth quarter of 1997.

While the PL Trustee has completed most of his work with excellent results in that millions of dollars were obtained from

insurance sources and paid out to successful PL Claimants, some work remains to collect and distribute insurance assets still forthcoming from the Northumberland insolvency proceeding pending under supervision of a Canadian court. No one has moved to close this bankruptcy case which might yet remain open for two or three years in order to insure collection of the last Northumberland insurance asset for benefit of injured PL Claimants.[2]

Many years after Plan confirmation, the UST moved here to compel Heico to give an accounting of its post-confirmation non-Plan ordinary business expenses and disbursements from and after January 27, 1996, and also to pay UST fees asserted applicable and resulting from those disbursements pursuant to 28 U.S.C. § 1930(a)(6). Heico initially sought an order to protect its business records necessary for such accounting. However it then stipulated that its non-Plan post-confirmation business disbursements exceeded the amount on which the maximum statutory quarterly fees would be computed and due to the UST if those expenditures gave rise under law to an obligation to pay such fees. That stipulation mooted the possible factual and evidentiary issues. As a result, the UST withdrew that part of his motion requesting an accounting, and the reorganized Debtor withdrew its motion for a protective order. Thus, the only remaining issue was on the UST's motion for payment by Heico of maximum fees possible pursuant to § 1930(a)(6), amounting to $40,000 each year following Plan confirmation.

The confirmed Plan did not expressly provide for payment of post-confirmation UST fees. Indeed, at the time of confirmation, the version of § 1930 then in effect required payment of quarterly fees only until a Chapter 11 case was confirmed, converted or dismissed. Eight years after Plan confirmation in this case with the PL Trustee still in the middle of his work, on January 27, 1996, Congress amended § 1930(a)(6) to provide for quarterly UST fees to be paid in all Chapter 11 cases until conversion or dismissal. That amendment was retroactive in effect as well as prospective; as amended it applies to current and future Chapter 11 cases, and also to those cases with plans confirmed prior to statutory amendment.

Heico has paid quarterly UST fees since January 27, 1996, but each time paid only the minimum statutory amount of $250. The UST argues that the statutory term "disbursements" includes all expenditures made by Heico for any reason, including not only those made post-confirmation under the Plan, but also those from its day-to-day non-Plan business operations. Heico argues that except for Plan related disbursements, it has made no "disbursements" within the meaning of § 1930(a)(6), on which the larger UST fees are to be based. It contends that at most only its disbursements to creditors under the confirmed Plan constituted applicable "disbursements," but that its large daily business non-Plan expenditures needed to run its substantial business since Plan confirmation did not and will not constitute "disbursements" under § 1930(a)(6). Moreover, it argues that even if its daily operations did and do constitute "disbursements", it is still not responsible for additional UST fees after it completed its own Plan payments as it had no involvement in or control of the bankruptcy proceeding after those payments were made and at no time had

---

**2.** The insolvency proceeding for the Debtors' primary insurer Northumberland has proved successful as Debtors' rights there were pursued for benefit of the PL Claimants by a special PL Committee and its counsel whose authority to do so was provided for in the Plan. Most of the claim on behalf of PL Claimants has been collected from that proceeding, but a large part has not yet been paid. Some concern exists as to whether the Canadian insolvency trustee would recognize continued authority of the Committee and its counsel if this case were closed. Absent any unforeseen problem, substantial additional funds from that source will likely be paid over the next two or three years.

ability to close the bankruptcy case, and will not have ability or right to do so in the future.

## JURISDICTION

The motion is properly before this Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. As more fully discussed below, the instant issue is within this Court's "arising in" jurisdiction, and such jurisdiction as applicable to Heico's duty to pay UST fees was reserved under the confirmed Plan to be exercised post-confirmation. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(L) ("Confirmation of plans").

■ Other parts of § 157 that the parties discussed as possible basis for core jurisdiction were not applicable after Plan confirmation because those provisions relate to the bankruptcy "estate", and that estate ceased to exist as a matter of law after Plan confirmation.[3] Therefore, if the Plan by its terms had not provided for UST fee payment which the court retained authority to enforce, no jurisdiction would lie in the bankruptcy court for this suit to collect statutory fees post-confirmation as a debt due to the United States, and the action would have been required to be presented to a non-bankruptcy court.

### The Confirmed Plan Reserved Jurisdiction Over Later Arising UST Fees

Section 2.01 of the Plan provided that: [a]llowed administrative expenses of the kinds specified in Code Section 507(a)(1), including trade payables arising after commencement of the Case, shall be paid in full by Reorganized Pettibone in the ordinary course of business in accordance with the credit terms customarily extended by the respective creditors or as ordered by the Bankruptcy Court. Plan at § 2.01. Administrative expenses specified in § 507(a)(1) include "administrative expenses allowed under Section 503(b) of this Title, and any fees and charges assessed against the estate under chapter 123 of Title 28." 11 U.S.C. § 507(a)(1). Section 1930 falls within chapter 123 of Title 28. Therefore, the Plan clearly meant that Heico is responsible for payment of any assessed UST fees that might become due under 28 U.S.C. § 1930.

Moreover, this court retained jurisdiction over demands for payment of such possible future UST fees through sections 9.08(a) and (g) of the confirmed Plan:

Following Confirmation and prior to completion of all actions required to be taken on or before the Implementation Date, the Bankruptcy Court shall retain jurisdiction as if the Plan had not been confirmed. Thereafter, the Bankruptcy Court shall retain jurisdiction solely for the following purposes as to which its jurisdiction shall be exclusive:

(a) to hear and determine any objections to Claims filed, both before and after Confirmation, including, without limitation, objections to PL Claims and objections to the classification of any other Claim or Interest and to allow or disallow any Disputed Claim in whole or in part;

\* \* \* \*

(g) to enter any orders enforcing and implementing the Plan and to resolve disputes arising under or in connection with the Plan;

Plan § 9.08.

■ The court's post-confirmation jurisdiction falls within both of these sections.

---

**3.** 28 U.S.C. § 157(b)(2)(A) defines matters concerning the administration of the bankruptcy estate as core proceedings. As the bankruptcy estate ceased to exist upon confirmation of the Plan, 11 U.S.C. § 1141(b), this subsection is inapplicable. Likewise, § 157(b)(2)(B) relates to "claims against the estate;" again, this not applicable because there was no bankruptcy estate post-confirmation.

First, the dispute over the UST fees is certainly over a "claim" (i.e. an asserted "right to payment" under 11 U.S.C. § 101(5)(A)) filed post-confirmation against the reorganized debtor. As such the court has retained jurisdiction pursuant to Section 9.08(a). Viewing this as a claim dispute, no adversary complaint need be filed and the issue may be decided under contested motion practice. Fed. R. Bankr.P. 7001 and 9014.

In addition, the motion falls within Plan § 9.08(g) allowing resolution of a dispute from an objection to a post-confirmation claim that requires plan interpretation, since the instant dispute relates to the UST's efforts to seek enforcement of the Plan provision relating to payment of UST fees, and thereby assert a post-confirmation claim.

### Collecting UST Fees Lies Under "Arising In" Core Jurisdiction in Light of Plan Terms

There is a distinction between "arising under," "arising in," and "related to" bankruptcy jurisdiction.

 Section 1334 of Title 28 vests in the district courts, "original and exclusive jurisdiction of all cases under Title 11" as well as "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(a) and (b). "Arising in" jurisdiction encompasses administrative matters that arise only in bankruptcy cases—matters not based on any right expressly created by Title 11 but without existence outside of bankruptcy. *Schechter v. State of Ill., Dept. of Revenue (In re Markos Gurnee Partnership)*, 182 B.R. 211, 220 (Bankr.N.D.Ill.1995), *aff'd sub nom, State of Ill., Dept. of Revenue v. Schechter*, 195 B.R. 380 (N.D.Ill.1996). Section 1930 specifically states that the

UST fees apply only to cases under Title 11. *See* 28 U.S.C. § 1930. There are no situations other than bankruptcy cases where this fee provision would be applicable. Therefore, a claim for UST fees could not exist outside of bankruptcy and lies under "arising in" jurisdiction. See *U.S. Trustee v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 218 B.R. 528, 542 (D.Or.1997); *Spaulding & Co. v. Buchanan (In re Spaulding & Co.)*, 131 B.R. 84 (N.D.Ill.1990) (finding that "arising in" jurisdiction did not exist in that case).[4]

The UST is part of the Department of Justice (28 U.S.C. § 581) and therefore brings the present motion to collect a debt assertedly due to the United States of America.

The reorganized debtor argues that finding "arising in" jurisdiction would conflict with this court's decision in *Spiers Graff Spiers*. It points out language in *Spiers* which relied on cited authority to the effect that after plan confirmation, a bankruptcy judge retains only limited jurisdiction to insure proper execution and consummation of the plan. *See Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1007 (Bankr. N.D.Ill.1996), citing *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991)(a court has jurisdiction post-confirmation only in order to implement provisions of a confirmed plan). But as earlier discussed, whether payment of UST fees is due in this case directly relates to execution of the confirmed Plan, and therefore "arising in" core jurisdiction rests on that basis.

 "Arising under" jurisdiction involves matters created or determined under the Bankruptcy Code Title 11 U.S.C. *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir.1995)

---

4. The reorganized debtor contends, based on reasoning in *In re Spaulding*, 131 B.R. 84 (N.D.Ill.1990) that the motion to compel does not "arise in" a Title 11 case because a matter must be "related to" in order to be "arising in." However, the reference to *Spaulding* was to a comment merely pointing out an alternative method of jurisdictional analysis, not attempting to set forth a premise that in order to be "arising under" or "arising in" one must always find "related to" jurisdiction. *See Spaulding*, 131 B.R. at 88.

*cert. denied;* 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995). Since the UST's claim for fees arises under 28 U.S.C. § 1930(a)(6) rather than the Bankruptcy Code it clearly does not arise "under" Title 11 U.S.C.

The parties also dispute whether the court has jurisdiction of the issue as having "related to" impact on the bankruptcy or monies available to creditors. As it is clear that the court has core "arising in" jurisdiction, any discussion of "related to" jurisdiction is unnecessary, though it does seem evident that whether Heico owes money to the United States will have no affect at all on the amount of monies distributed and to be distributed to creditors in this case and therefore no relation to Plan execution.

### *"Disbursements" Under 28 U.S.C. § 1930(a)(6)*

■ Pursuant to § 1930(a)(6), the United States is to be paid a quarterly UST fee based upon the amount of "disbursements" made by a Chapter 11 debtor. The provision reads:

(a) Notwithstanding section 1915 of this Title, *the parties commencing a case under Title 11* shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this Title, the following filing fees:

\* \* \* \*

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, *in each case under chapter 11 of Title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed,* whichever occurs first. The fee shall be $250 for each quarter in which *disbursements* total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6) (emphasis added).

Precedents have split as to what constitutes "disbursements" under that provision following confirmation. Courts' interpretations of the term "disbursement" have been divided into three different views: broad, middle and narrow. *See* discussion in *In re Postconfirmation Fees,* 224 B.R. 793, 797 (E.D.Wash.1998).

The broad view counts payments made in accordance with the confirmed plan as well as payments made in the ordinary course of business by the reorganized debtor even if unrelated to the confirmed plan obligations of the debtor. *See In re Maruko, Inc.,* 219 B.R. 567 (S.D.Cal. 1998); *Postconfirmation Fees,* 224 B.R. at 797; *In re Pars Leasing, Inc.,* 217 B.R. 218 (Bankr.W.D.Tex.1997), and *In re A.H. Robins Co., Inc.,* 219 B.R. 145 (Bankr.E.D.Va.1998). These opinions read the amended § 1930(a)(6) to provide for quarterly UST fees to cover all postconfirmation expenditures. "Congress did not intend to limit the definition of disbursements through the Amendment. On the contrary, Congress expressly intended to help the U.S. Trustee fund itself by allowing it to charge a fee for *all* disbursements until a case is converted or

dismissed." *Maruko,* 219 B.R. at 572 (emphasis added).

In contrast, the narrow view holds that as the "bankruptcy estate" ceases to exist upon confirmation, there can be no disbursements from the "estate." Thus, only the minimum quarterly fees should or could be intended to apply under the revised statute. *See Postconfirmation Fees,* 224 B.R. at 797 (citing *In re Betwell Oil and Gas Co.,* 204 B.R. 817 (Bankr.S.D.Fla. 1997)).

The middle view holds that, as the revised § 1930 was intended to fund limited UST post-confirmation supervision over execution of the plans, "disbursements" thereafter include payments made according to the confirmed plan of reorganization, but not to non-Plan business payments by the reorganized debtor. *See Tiffany v. Celebrity Duplicating Servs, Inc. (In re Celebrity Duplicating Servs., Inc.),* 216 B.R. 942, 944–45 (C.D.Cal.1997). See also *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321, 323 (Bankr.S.D.Fla.1996). Because assets of the "bankruptcy estate" revest in the reorganized debtor upon Plan confirmation, "any payments, distributions, or allocations made by a reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute 'disbursements'." *Id.*

■ A look at the legislative history of § 1930 is necessary to reach a proper interpretation of the term "disbursement." Of course where statutory language is plain, the court should follow that language, rather than "isolated excerpts from the legislative history." *Patterson v. Shumate,* 504 U.S. 753, 761 n. 4, 112 S.Ct. 2242, 2248 n. 4, 119 L.Ed.2d 519 (1992). The exception to this rule of statutory construction is when "the plain language of the statute would lead to the 'patently absurd consequences,' that 'Congress could not possibly have intended,' we need not apply the language in such a fashion." *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 470, 109 S.Ct. 2558, 2575, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring) (quotations and internal citations omitted).

But saying that a statute has "plain language" does not always make it so. In an interesting self-contradiction one court has opined as to the § 1930(a)(6) use of the word "disbursements":

Although not perfectly luminescent or free of potential contradictions, the statute standing alone is sufficiently clear to resolve this case.

*U.S. Trustee v. Boulders on the River, Inc. (In re Boulders on the River, Inc.),* 218 B.R. 528, 537 (D.Or.1997).

■ That opinion went on to discuss the statutory history most thoroughly because the statutory language is not at all plainly written, as most opinions on the statute have recognized. That expansive and useful discussion of the history and purpose of § 1930 is appropriate to quote and adopt at length (though the opinion reasoned to a different result than is reached here):

*a. Pre–Amendment Statute:*

In 1996, Congress passed two amendments to the UST quarterly fee statute. Prior to these amendments, quarterly fees in chapter 11 cases terminated upon the occurrence of any of three events: (1) confirmation of a plan, (2) conversion of the case to another chapter of the bankruptcy code, or (3) dismissal of the case. Of these three, plan confirmation, which is ideally followed soon after by entry of a final decree closing the case, was and is the preferred and most frequently used method of concluding a chapter 11 case. Prior to one of these three terminating events, section 1930(a)(6) fees were determined for each quarter by reference to a graduated fee schedule set forth in the statute. Depending upon the level of disbursements in a quarter, section 1930(a)(6) fees ranged from a minimum of $250 for cases with disbursements less than $15,-000, to a maximum of $5,000 for cases

with disbursements of $3 million or more.

* * * *

When a debtor files a case seeking protection under chapter 11 of the bankruptcy code, a "bankruptcy estate" is immediately created and becomes the repository of the debtor's property generally until a plan is confirmed by the bankruptcy court. 11 U.S.C. §§ 541, 1141(b). Thus, under the pre-amended statute, quarterly fees and the bankruptcy estate often terminated at the same moment. Because fees were owed only during the existence of the bankruptcy estate, it was reasonable for courts and the UST, in calculating quarterly fees, to look only at disbursements made by the bankruptcy estate, and ignore distributions made subsequent to plan confirmation by the reorganized debtor or the otherwise reconstituted estate.

Within this context, and prior to the congressional amendments at issue here, the Ninth Circuit interpreted "disbursements" broadly to encompass all payments from the bankruptcy estate. *St. Angelo v. Victoria Farms*, 38 F.3d 1525, 1534 (9th Cir.1994), modified in part, 46 F.3d 969 (9th Cir.1995) (no modification to analysis of "disbursements"). See also *In re Ozark Beverage Co., Inc.*, 105 B.R. 510 (Bankr.E.D.Mo.1989).

*b. January 1996 Amendment:*

On January 26, 1996, President Clinton signed H.R. 2880, the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996). Section 211 of that legislation amended the UST fee statute, 28 U.S.C. § 1930(a)(6), by deleting the words "a plan is confirmed or." As amended, section 1930(a)(6) provides, in pertinent part, as follows (the language stricken is bracketed):

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of Title 11 for each quarter (including any fraction thereof) until [a plan is confirmed or] the case is converted or dismissed, whichever occurs first.

28 U.S.C. § 1930(a)(6) (1996).

Thus, the January, 1996, amendment expanded the scope of the quarterly fees by removing one of the three terminating events.

*c. Legislative History of January Amendment:*

The legislative history leading up to the enactment of the January amendment is helpful in uncovering its purpose, scope and intent. As with many federal budgetary matters and many initiatives proposed to Congress by the Executive, a full historical understanding of this provision is greatly assisted by reference to the budget justification documents submitted to Congress in conjunction with the President's annual budget proposal.

The UST system was originally established to operate as a self-funded program. H.R.Rep. 99–764, 99th Cong., 2d Sess., p. 26 (1986); *United States Trustee v. Endy (In re Endy)*, 104 F.3d 1154, 1157 (9th Cir.1997). By the mid–1990s, quarterly fees, which constitute a significant portion of UST funds, had sharply declined. [Footnote omitted] In response to this decline in financial resources, as well as to a stated need for increased post-confirmation oversight, the budget justification documents filed in connection with the fiscal year 1996 budget proposed by the President for the UST program contained two proposals. One proposal, the amendment to the quarterly fee statute at issue here, to pay for the other, a staffing increase.

The first proposal was to increase the UST staff by twenty attorneys in order to strengthen general chapter 11 case supervision and post-confirmation oversight. The second proposal was to amend the UST quarterly fee statute, 28

U.S.C. § 1930(a)(6), to require chapter 11 debtors to pay quarterly fees after plan confirmation. Both of these requests were ultimately granted. The budget justification document includes the following:

Program Increase: Increase by 55 positions (20 attorneys) ... to strengthen chapter 11 case supervision and post-confirmation oversight.

. . . . .

The most recent available data from the Administrative Office of the United States Courts indicates that as of September 30, 1994, there were 69,472 chapter 11 cases pending in the courts (including both preconfirmation and post-confirmation cases). Yet, the [UST] Program's chapter 11 data indicate that as of October 15, 1994 there were only 16,387 chapter 11 cases for which no confirmation plan had been approved. These statistics highlight the problem of chapter 11 cases languishing on the docket after a plan of confirmation had been approved by the court.

. . . . .

Monitoring debtors in post-confirmation is a duty which was not envisioned by the staffing structure at the time of the Program's nationwide expansion and one for which the Program has never received resources. The requested increase is critical to ensure that there is an entity in the bankruptcy process which will require debtors to meet their post-confirmation responsibilities under the law.

General Provision: The [requested increase in legal staff] is paid for by a proposed change in the law which, if enacted, would require chapter 11 debtors to continue to make quarterly payments based on disbursements until a case is converted or dismissed. The proposed change is a logical extension of the Program's present funding mechanism. Currently, chapter 11 debtors are only assessed quarterly fees until a reorganization plan is confirmed by the bankruptcy court, making post-confirmation debtors the only entities in the bankruptcy process who are exempt from fees. There is no rational basis for such an exemption and the proposed amendment will close a loophole that allows cases to languish without paying for Program services.

. . . . .

[T]he fee increase proposal was included as section 111 of H.R.2076,

. . . . .

In the report accompanying H.R.2076, the Committee included the following explanation of section 111:

Decline in Bankruptcy filings.—The [Committee] recommendation assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget. . . . The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly. However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention. The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period). Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court. The additional fees will be deposited as offsetting collections to the United States Trustee System Fund and will provide the resources necessary to ensure adequate post-confirmation oversight and supervision of Chapter 11 cases.

H.Rep. 104–196, 104th Cong., 1st Sess., at 16–17 (1995).

The House of Representatives passed H.R.2076 on July 26, 1995. 141 Cong.

Rec. H–7791 (section 111 reprinted at 141 Cong.Rec. H–7635) (1995). The Senate Appropriations Committee in turn included identical fee language in its counterpart version of the bill, and explained in its report: "As requested, the Committee recommendation includes an extension of the quarterly fee payments made under chapter 11 to include the period after a reorganization plan has been confirmed by the bankruptcy court until the case has been dismissed." Sen. Rep. 104–139, 104th Cong., 1st Sess. (1995). The Senate passed this measure on September 29, 1995. 141 Cong.Rec. S–14697 (1995).

The joint House–Senate conference committee, appointed to resolve the differing versions of H.R.2076, included the following passages in its conference report:

> The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases.

> . . . . .

> [T]he conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.

H.R.Conf.Rep. 104–396, 104th Cong., 1st Sess. (1995); 141 Cong.Rec. H–13894, 13899 (1995).

. . . . .

[Following veto of H.R.2076, the amendment was attached to another bill.]

On January 26, 1996, H.R. 2880 and its accompanying amendment to the UST quarterly fee statute, 28 U.S.C. § 1930(a)(6) became law.

*d. September 1996 Clarifying Amendment:*

Following its enactment, a number of bankruptcy courts refused to apply the January amendment to cases with plans confirmed prior to the amendment's effective date, January 27, 1996. [Footnote omitted] Congress resolved this issue by enactment of a second clarifying amendment, which became effective September 30, 1996. In section 109 of H.R. 3019, the Omnibus Consolidated Appropriations Act for Fiscal Year 1997, Pub.L. 104–208, 110 Stat. 3009 (1996), Congress powerfully clarified its intent that the amended version of section 1930(a)(6) apply to all pending cases, even those with plans confirmed prior to the January amendment's effective date. Section 109(d) states: "[N]otwithstanding any other provision of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of confirmation status of their plans." [Footnote omitted] Section 109(a) of the September, 1996, amendment also includes an across-the-board increase in section 1930(a)(6) fees, another item requested by the Executive to further offset declining UST fees. H.Rep. 104–676, 104th Cong., 2d Sess. (July 16, 1996).

*Boulders on the River,* 218 B.R. at 532–36.

■ In the context of that legislative history, the version of § 1930(a)(6) now in effect must be read for the intent under that provision to fund work of the UST, including UST work both before and after confirmation, in supervision of the bankruptcy process under Chapter 11 of the Bankruptcy Code. The greater the dollar amount of the quarterly "disbursements", the greater is the UST fee up to the statutory maximum.

However, "disbursements" is nowhere defined in the statute, and the Congress never went so far as to specify computation of UST fees on "all post-confirmation business expenditures" of the reorganized debtor or any like wording. Yet some opinions in using the phrase "plain language" like a mantra have declared this vague statutory reference to "disbursements" must surely cover all business expenditures post-bankruptcy because it covered all such pre-bankruptcy expenditures. But since the statute is by no means plain in its expression or facial meaning, it's quite a stretch to read it to continue application of the formula post-confirmation to all non-Plan business expenditures that have no relation to the bankruptcy or to the UST's work since the UST does not supervise non-Plan expenses or operations after confirmations.

The UST asserts under 28 U.S.C. § 586(a)(3)(G) that its postconfirmation duties require it to "supervise the administration of cases and trustees in cases under Chapter 7, 11, 12 or 13 of Title 11 by, whenever the United States trustee considers it to be appropriate, monitoring the progress of cases under Title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress. . . ." On that authority the UST argues that those duties do not end at confirmation but continue until a case is closed.

■■■ There is no statutory termination point to duties provided under § 586(a)(3)(G). That provision must be read to continue the UST supervisory duties over the postconfirmation administration of the Chapter 11 case (and in this case over the Plan Trustee appointed herein) until the case is closed or dismissed.

However, there is a sharp contrast between the foregoing limited post-confirmation function and the UST's extensive duties pre-confirmation:

a. On the filing of a case the UST sets a date for the first meeting of creditors and equity security holders pursuant to § 341 and presides at that meeting.

b. As soon as practicable after the order for relief under Chapter 11, the UST appoints a committee of creditors holding unsecured claims. 11 U.S.C. §§ 1102, 1103. The UST is responsible for monitoring the committee of creditors.

c. The UST also collects and review financial reports, insures that tax payments are timely made, monitors accrual of unpaid administrative expenses and monitors all pleadings filed.

d. The UST may request that the court order the appointment of a trustee or examiner at any time after the commencement of a case under Chapter 11 but before the confirmation of a plan 11 U.S.C. § 1104(a) and (b). The UST has supervisory responsibility with respect to a trustee appointment pursuant to 11 U.S.C. § 1104; 28 U.S.C. § 586(a)(3).

e. The UST reviews and comments on the adequacy of the disclosure statements pursuant to 11 U.S.C. § 1125. 28 U.S.C. § 386(a)(3)(B), and may comment on legality of a proposed Plan.

f. The UST reviews all professional's employment applications and evaluates whether the employment application complies with FRBP 2014(a). The UST files with the court comments with respect to such application and, if the UST considers it to be appropriate, objections to such application. 28 U.S.C. § 586(a)(3)(A).

g. The UST ensures that all reports, schedules, and fees required to be filed under Title 11 and this Title by the debtor are properly and timely filed. 28 U.S.C. § 586(a)(3)(D).

h. The UST may, as a "party in interest" move the Court to limit the

powers and duties of debtors in possession short of asking appointment of a Chapter 11 Trustee, §§ 1107 and 1108, and may be heard on any issue in the case, § 1109(b).

It is clear that following Plan confirmation, the UST has no similar responsibility or authority to supervise non-Plan business operations of the reorganized debtor. Apart from collecting UST fees following confirmation the UST should generally see that the plan is consummated, *In re Betwell Oil and Gas Co.*, 204 B.R. 817 (Bankr. S.D.Fla.1997), failing which a motion might lie to dismiss the case or convert it to one under Chapter 7 of the Bankruptcy Code. The limited statutory post-confirmation UST duties referred to—which Congress sought to fund through the post-confirmation UST fee—relate only to seeing to carrying out of the Plan or seeking remedies for failure to do so.

There is no precedent on point from the U.S. Supreme Court or the Circuit Court of Appeals for the Seventh Circuit, nor are there applicable opinions from any of the other U.S. Circuit Courts of Appeals. Due to absence of controlling case authority, this Court writes with deference to the various and contradictory opinions of bankruptcy and district judges, but is not bound by them. In light of the many non-binding precedents supporting differing constructions of the term "disbursements", our task is to apply the most sound reasoning leading to a result that carries out the statutory purpose.

The most sound reasoning articulated in the various opinions is that the term "disbursements," when it applies for purposes of computing post-confirmation § 1930 fees, only refers to payments made pursuant to a confirmed Plan and not to day-to-day business expenditures unrelated to the Plan. Only that interpretation can carry out the legislative purpose shown by statutory language and context and be consistent with legislative history under which UST duties related to bankruptcy are to be funded by UST fees. *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996).

Both Heico and the UST cite to *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994), *opinion amended*, 46 F.3d 969 (9th Cir.1995) to support their positions as to whether additional fees are due. However, any reliance on that case is misguided. In *St. Angelo*, the opinion looked to whether sale proceeds distributed by an escrow agent and an attorney constituted "disbursements" under § 1930. The bankruptcy court and district court each held that the statutory term "disbursements" excludes payments made to a secured creditor from sale proceeds of the secured property, but the Circuit Court reversed. *Id.* at 1528. The Circuit Court opinion pointed out that the word "disbursement"

> is not defined anywhere in 28 U.S.C. § 1930(a)(6), its legislative history, or the case law. However, a plain language reading of the statute shows that Congress clearly intended 'disbursements' to include all payments *from the bankruptcy estate.*

*Id.* at 1534. (Emphasis supplied.)

*St. Angelo*, however, was decided prior to the 1996 amendment. Therefore, the *St. Angelo* opinion was undoubtedly correct in holding that all payments from the *"bankruptcy estate"* were "disbursements" under § 1930 because that case involved preconfirmation payments. Upon confirmation here, the bankruptcy estate ceased to exist. 11 U.S.C. § 1141(b). Therefore, the *St. Angelo* opinion and reasoning have no applicability to post-confirmation disbursements in issue here.

In *SeaEscape Cruises*, the debtor moved for entry of a final decree closing its bankruptcy case. 201 B.R. 321 (Bankr.S.D.Fla. 1996). The U.S. Trustee objected to the motion, contending that the debtor owed post-confirmation quarterly fees to the U.S. Trustee under 28 U.S.C. § 1930. The debtor argued *inter alia* that if it were liable for any fees it was only liable for

U.S. Trustee fees based upon disbursements made by the bankruptcy estate and not by the reorganized debtor. The Court held that post-confirmation "disbursements" under § 1930 were limited to payments made pursuant to the Plan of reorganization and did not include all post-confirmation expenditures of the reorganized debtor. *Id.*

That opinion found no support for reading § 1930 to cover payment for business activities of a reorganized debtor outside of its implementation of a confirmed plan of reorganization:

> A bankruptcy estate is created when a petition for relief is filed ... The bankruptcy estate is a separate legal entity ... Upon a plan's confirmation and/or pursuant to the plan's terms, the bankruptcy estate's assets revest in the name of the reorganized debtor and are no longer part of the bankruptcy estate ... Therefore, any payments, distributions or allocations made by the reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute 'disbursements' under section 1930(a)(6) and cannot serve as a basis upon which the U.S. trustee may calculate its fee. The U.S. Trustee may, however, calculate post-confirmation fees on ... any payments made pursuant to a confirmed plan of reorganization.

*Id.* at 323.

Several other opinions have been in accord with that reasoning. In *In re Betwell,* 204 B.R. 817, 819 (Bankr.S.D.Fla. 1997), the bankruptcy court rejected both the most narrow view of disbursements (which would entitle the U.S. Trustee to only the minimum $250 fee post-confirmation) and the broad view advocated there and here by the UST. The bankruptcy court noted that because payments made in the general operation of the reorganized debtor's business could not be considered payments made from property of the estate (which vested in the reorganized debtor as of confirmation), a strict interpreta-

tion would result in the minimum $250 quarterly fee always being paid during the post-confirmation period. To avoid that result, the bankruptcy court held that "to give meaning to the post-confirmation obligation imposed by Congress, the fees should be calculated against disbursements made pursuant to a plan." *Id.* at 819. The bankruptcy court reasoned that the statute was not intended to tax the general business operations of the reorganized debtor once the debtor had completed its duties in bankruptcy and no longer subject to supervision of the bankruptcy court or its jurisdiction with respect to debtor's post-confirmation operation.

If the Reorganized Debtor in this case filed an adversary proceeding here with regard to a commercial or tax dispute arising post-confirmation, this Court would almost certainly lack subject matter jurisdiction over the proceeding. *See Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers),* 190 B.R. 1001, 1007 (Bankr.N.D.Ill. 1996) (bankruptcy court retains limited jurisdiction post-confirmation to insure proper execution and consummation of the Plan). By the same token, the term "disbursements" can hardly be interpreted so as to thrust the bankruptcy court back into the position of monitoring the post-confirmation operations of the reorganized debtor so as to insure a proper accounting to the UST as was originally sought here before that issue was mooted by stipulation. If a broader definition of "disbursement" were adopted, monitoring costs would be imposed on debtors and other parties before the bankruptcy court to determine whether the reorganized debtor was giving a proper account to the U.S. Trustee each quarter of its ordinary business expenditures.

The District Court Judge affirmed the bankruptcy judge's opinion in *Betwell* in an unpublished opinion. 97–774–Civ–Gold (S.D.Fla. Oct. 7, 1998). The Bankruptcy Judge in *In re Jamko, Inc.,* 207 B.R. 758 (Bankr.S.D.Fla.1996) came to the same conclusion through similar reasoning, but

was subsequently reversed at 240 B.R. 645 (S.D.Fla.1999). Thus, two District Judges in the District Court for the Southern District of Florida have different opinions on the definition of "disbursements."

Similarly, *In re Munford, Inc.,* 216 B.R. 913 (Bankr.N.D.Ga.1997) holds to the middle view adopted here. The bankruptcy court in Munford rejected arguments by the debtor and creditors committees that the bankruptcy court had no jurisdiction to consider a request for an increase in fees post-confirmation, and also rejected arguments that the January 26, 1996 and September 30, 1996 amendments to 28 U.S.C. § 1930 could not have retroactive application to a plan confirmed prior to the amendments. *Id.* at 915–17. Turning to the meaning of disbursements, the opinion adopted the middle view:

> [I]n furtherance of the legislative purposes, and in adherence to the statute's plain meaning, the court concludes that a reasonable interpretation of the term "disbursements" includes post-confirmation payments made pursuant to a confirmed plan. Thus, the quarterly trustee fees are based upon the greater of the disbursements made pursuant to the plan or the $250 minimum fee.

*Id.* at 919

Another decision supporting this view is *Tiffany v. Celebrity Duplicating Services, Inc. (In re Celebrity Duplicating Servs., Inc.),* 216 B.R. 942 (C.D.Cal.1997). In *Celebrity,* the district court held that "[s]ince a bankruptcy estate ceases upon confirmation of a plan, payments by a reorganized debtor are outside the scope of § 1930 'disbursements' as defined in *Victoria Farms.*"

The most recent opinion following this middle view is in *In re Wintersilks, Inc.,* 243 B.R. 351 (Bankr.W.D.Wis.1999).

This case may remain open for a least two or three more years to allow for collection of all possible Northumberland insurance proceeds, and it is doubtful here that the Debtor even has standing to close the case. If the Reorganized Debtor cannot close the case, and can do nothing to hasten its closing, the broaden interpretation of "disbursements" would place Heico in a trapped position quite different from cases in which the reorganized debtors had ability to close the cases. Indeed, many of the opinions advocating the broad interpretation arose in the context of motions by the reorganized debtors to close their cases. *See,* e.g., *In re N. Hess' Sons, Inc.,* 218 B.R. 354 (Bankr.D.Ma.1998); *In re Corporate Business Products, Inc.,* 209 B.R. 951 (Bankr.C.D.Cal.1997).

One criticism sometimes voiced against the middle view of the term "disbursement" is that it renders the sliding scale of § 1930(c)(6) a nullity. However, the facts of this case show that when using plan-related disbursements of the reorganized debtor as basis for calculating the quarterly fees, payments in excess of the minimum $250 quarterly fee can come due.

Paragraph 8 of the Stipulation of Facts Regarding the Motion to Compel, filed with the Court in late March 1999 stated that the Reorganized Debtor as Plan Disbursing Agent made its most recent and final distribution from the Plan's Disputed Claims Reserve in October 1997, at which time it distributed $1,305,562.57 from the Stock Pool and $52,306.74 from the Note Pool.

In its initial brief opposing the Motion to Compel, filed on October 21, 1998, the Reorganized Debtor argued that this distribution was not a "disbursement" within the meaning of the § 1930(a)(6) because the Reorganized Debtor had disbursed the proceeds of the Stock and Note Pools to the Disbursing Agent back in December, 1988 on the Plan Implementation Date. However, it now concedes that the October 1997 Plan payment was a statutory "disbursement." Based on the sliding scale under § 1930 in effect in October 1997, Heico stipulated that it owes an additional $4,750 in UST fees for the affected quarter in 1997 ($5,000 based on disbursements between $1 million and $2 million during

the fourth quarter of 1997 less the $250 minimum previously paid.) Thus, the sliding scale obviously can apply to Plan payments after confirmation even if the UST view is rejected.

The reasoning of the "middle view" is logical and in accord with statutory purpose and context. The amendment to § 1930 specifically eliminated confirmation as the cut-off for quarterly fee payments; thus, payments must continue post-confirmation until conversion, closure or dismissal. Congress plainly intended the statute to cover post-confirmation plan "distributions," but it did not specify that such "distributions" include business expenses unrelated to bankruptcy or to the plan or to the duties of the UST. A bankruptcy case, as here, may have some form of liquidating trust and might remain open for years post-confirmation.

To read § 1930(a)(6) otherwise would be to find a special tax imposed on a debtor's successful reorganization and business operation, a tax unrelated to the bankruptcy case that the debtor has no power to end where as here a continued Plan trust has issues that keep the case open. Such interpretation would also read § 1930 to impose a general tax that would not merely fund the UST work but would also reduce the national debt without regard to UST duties or enforcement duties of that office. It would read the statute to impose a tax as if the law were read to be based on "all business expenditures," when the latter words are not included in the statute. Indeed, the original purpose of § 1930 was to fund UST supervision over all pre-confirmation "disbursements" because all pre-confirmation disbursements affect the bankruptcy and are supervised by the UST. In referring to "disbursements" post-confirmation without expressly basing the UST fee on "all business expenditures," the statutory purpose remained to fund the reduced duties of the UST post-confirmation, and the fee is therefore based on bankruptcy-related "disbursements."

Thus, a reorganized debtor must make quarterly fee payments based only on post-confirmation Plan distributions, or the minimum quarterly payments, whichever is larger. This continues until the case is closed. Read thus, the amount of the UST fees due under § 1930 correlates to the bankruptcy Plan and process. Heico therefore has no additional liability for UST fees based upon its non-Plan, post-confirmation ordinary business expenditures.

### Heico succeeded to the liability of "parties commencing" this case.

There remains one further issue to discuss. Heico objected that it is not the original debtor and is not covered by the statute. Thus, it contested responsibility for UST fees. However, § 1930(a)(6) obligates the parties commencing a bankruptcy case to pay post-confirmation UST fees. 28 U.S.C. § 1930(a). As the Debtor entities commencing this case no longer legally exist, the obligation must succeed, either to the reorganized debtor Heico or to the PL Trustee or perhaps to both, so Heico is certainly liable for a fee based upon its Plan disbursements, or the minimum quarterly payments, whichever is larger.

The fact that the Plan was drafted and confirmed prior to amendment of § 1930 makes no difference here. Section 1930 existed at the time the Plan was drafted and confirmed and Section 2.01 of the Plan encompassed it in whatever form the Congress chose to amend it. Moreover, the statute assesses UST fees against "the parties commencing a case under Title 11 . . ." and under the Plan Heico is successor to the original Debtors.

*In re Boulders on the River, Inc.* directly addressed the issue:

> The statute appears to assess a quarterly fee against "the parties commencing a case under Title 11 . . . ." This alone is somewhat ambiguous, however, due to

the break in the cadence of the statute. The statute begins with a list of five categories of fees which "the parties commencing a case under Title 11 shall pay to the clerk" of the court. The sixth category of fees under section 1930(a) is the UST quarterly fee. Here the language of the statute changes somewhat, directing that, "[i]n addition to the filing fee to be paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11...." Although the statute does not specify the entity responsible for paying the fee, nothing in the statute indicates a departure from the initial focus on "the parties commencing a case under Title 11," as set forth at the beginning of the series.

*In re Boulders on the River, Inc.*, 218 B.R. 528, 536 (D.Or.1997). *See also In re Post-confirmation Fees*, 224 B.R. 793, 797 (E.D.Wash.1998).

Heico has raised a question as to whether the PL Trust or PL Trustee in this case could be liable for UST fees. No other parties to the case have addressed this issue and no motion has been presented to seek payment from the PL Trustee, so that issue is not now presented for decision, though some comments seem appropriate.

 Liquidating trustees are generally said to step into the shoes of a debtor. *In re CSC Indus., Inc.*, 226 B.R. 402, 406 (Bankr.N.D.Ohio 1998). "A liquidation trust will also be treated as a debtor if so provided in the trust provisions and will therefore be responsible for any fees which may be applicable to the debtor." *Id.* (citations omitted). Therefore, it would seem that under some confirmed Chapter 11 plans a liquidating trustee might be successor to "parties commencing" the bankruptcy and that such a trustee might become liable for UST fees.

However, only limited and specified charges are to be paid by the PL Trust under the Plan confirmed here, and jurisdiction over the UST fee issue lies in this court only to enforce the confirmed Plan. Specific language of that bankruptcy Plan as earlier quoted determines responsibilities of the parties, (*See CSC Indus.*, 226 B.R. 402; *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr.N.D.Ohio 1997)), as well as this Court's continued jurisdiction.

Under that Plan it seems doubtful that the Plan trustee has authority to pay UST fees. Heico contends that certain sections of Article 7 of the Plan generally dealing with the duties of the PL Trustee allow payment by that Trustee of the UST fees. However, a complete reading of Article 7 shows that only very specific costs are to be assessed against the PL Trust such as direct costs incurred by the trustee and professionals hired to assist in discharge of his duties. Payment of UST fees are not specified among those costs to be paid out of the PL Trust, and a confirmed Plan should be enforced as written. *See Charter Assets Corp. v. Victory Mkts., Inc. (In re Victory Mkts. Inc.)*, 221 B.R. 298, 303 (2nd Cir. BAP 1998); and 11 U.S.C. § 1141(a).

### CONCLUSION

While Debtor is responsible for post-confirmation administrative expenses including the UST fees due under the statute based on Plan disbursements, its day-to-day non-Plan business expenditures do not constitute "disbursements" under § 1930 for purposes of computing that fee. Therefore, by separate orders to be entered, the UST's Motion to Alter and Amend the Court's Order Denying UST's Motion for Payment of Fees by Heico will be allowed only for the limited purpose of vacating the original order and entering a new order for payment of the $4,750 stipulated to be due and the minimum quarterly payments of $250 due in other annual quarters. The balance of relief sought will be denied.